

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

NO. 2-07-239-CV

AMX ENTERPRISES, L.L.P.,                                    APPELLANT
F/K/A AMX ENTERPRISES, INC.

V.

MASTER REALTY CORP.                                         APPELLEE

------------

FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION ON REHEARING

------------

We grant Appellant AMX Enterprises, L.L.P.'s motion for rehearing in part, deny it in part, withdraw our opinion and judgment of January 8, 2009, and substitute the following. The only changes from our original opinion are the additions of this paragraph and the last sentence of this opinion on rehearing.

Among the issues in this case are three questions of first impression: Whether a trial court may toll the accrual of statutory interest under the Prompt

Payment to Contractors Act[1] for periods of delay attributable to the claimant; whether a contractor who prevails on a claim under the Act may recover both 18% prejudgment interest under the Act and common law prejudgment interest; and whether attorney's fees for in-house counsel should be calculated under the "market rate" method or the "cost-plus" method. We answer "no" to the first question, "no" to the second, and "market rate" to the third. We affirm the trial court's judgment in part, reverse and render in part, and remand for a new trial on attorney's fees.

### Background

In April 2002, Appellee Master Realty Corp. ("MRC") hired Appellant AMX to remediate flood damage in a hotel owned by MRC for the contract price of $469,834. During its work on the project, AMX submitted three invoices to MRC, as follows: An invoice for $46,983 dated October 14, 2002; an invoice for $305,392.10 dated November 11, 2002; and an invoice for $117,458.90 dated January 31, 2003. Together, the invoice amounts equal the contract price of $469,834. MRC paid AMX $46,983 on November 4, 2002; $200,000 on February 19, 2003; and $175,951 on March 10, 2003,

---

[1] Tex. Prop. Code Ann. §§ 28.001–.010 (Vernon 2000).

for a total payment of $422,934, leaving a balance on the contract price of $46,900.

On October 23, 2003, AMX sued MRC for breach of contract, violation of the Prompt Payment to Contractors Act, judicial foreclosure of its constitutional lien, and attorney's fees. MRC filed a general denial.

MRC sold the hotel to Composite Investments, Inc. in July 2004 and, because of AMX's lien on the property, placed $93,800 in an escrow account to facilitate the sale. AMX joined Composite as a defendant, seeking judicial foreclosure of the lien AMX had placed on the property, but AMX later agreed to dismiss its lien with prejudice in exchange for Composite's depositing $93,800 into the trial court registry.

AMX and MRC tried their dispute to a jury in September 2006. The parties stipulated the facts related to AMX's Prompt Payment to Contractors Act claim, namely, the dates and amounts of AMX's invoices and of MRC's payments. The jury rendered a verdict in favor of AMX for $46,900. The parties agreed to submit the issue of attorney's fees to the court.

AMX moved for the entry of judgment on the verdict, seeking a judgment of $46,900 in contract damages awarded by the jury; statutory interest under the Prompt Payment to Contractors Act in the amount of $46,452.86; common law prejudgment interest; attorney's fees in an amount between $221,768.49

3

and $254,110.16, of which an amount between $194,049.99 and $226,391.66 was attributable to work done by AMX's in-house counsel; court costs; and postjudgment interest.

The trial court entered judgment on May 31, 2007. The judgment awarded AMX $46,900 in contract damages, $18,758.43 in statutory interest under the Prompt Payment to Contractors Act, no common-law prejudgment interest, and no attorney's fees. Upon AMX's request, the trial court made findings of fact and conclusions of law. Among other things, the trial court found that AMX had "caused significant periods of delay" in the litigation totaling 745 days and that AMX had failed to prove that it had actually incurred the attorney's fees it claimed. AMX filed this appeal.

**Discussion**

I.    **Tolling of prejudgment interest under the Prompt Payment to Contractors Act**

In its first issue, AMX argues that the trial court erred by tolling the accrual of prejudgment interest under the Prompt Payment to Contractors Act for litigation delays that the trial court attributed to AMX.

The Prompt Payment to Contractors Act provides that an owner of real property who receives a written payment request from a contractor for an amount that is allowed under a contract for properly performed work or suitably

4

stored or specially fabricated materials must pay the amount, less any amount withheld as authorized by statute, not later than the thirty-fifth day after the date the owner receives the request. Tex. Prop. Code Ann. § 28.002(a). Section 28.004, captioned "Interest on Overdue Payment," provides as follows:

> (a) An unpaid amount required under this chapter begins to accrue interest on the day after the date on which the payment becomes due.
>
> (b) An unpaid amount bears interest at the rate of 1 1/2 percent each month.
>
> (c) Interest on an unpaid amount stops accruing under this section on the earlier of:
>
>> (1) the date of delivery;
>>
>> (2) the date of mailing, if payment is mailed and delivery occurs within three days; or
>>
>> (3) the date a judgment is entered in an action brought under this chapter.

*Id.* § 28.004. Significantly, the Act contains no provision for tolling the accrual of interest during periods of litigation delay, and no court has held that a trial court may toll interest accruing under the Act.

MRC contends that the interest provided by the Act is simply prejudgment interest and that a trial court has the equitable power to toll its accrual. In support of its equitable-tolling argument, MRC cites *Helena Chemical Company v. Wilkins* ("*Wilkins I*"), in which the San Antonio court held that a trial court

5

may, in its discretion, issue orders tolling prejudgment interest during periods of delay. 18 S.W.3d 744, 760 (Tex. App.—San Antonio 2000), *aff'd*, 47 S.W.3d 486 (Tex. 2001) ("*Wilkins II*"). *Wilkins* relied on former finance code section 304.108(b), which specifically authorized prejudgment interest tolling in wrongful death, personal injury, and property damage cases. *Id.*; *see* Act of May 22, 1997, 75th Leg., R.S., ch. 1008, § 1, 1997 Tex. Gen. Laws 3091, 3436, *repealed by* Act of May 16, 2003, 78th Leg., R.S., ch. 204, § 6.03, 2003 Tex. Gen Laws 847, 862. Although the legislature repealed section 304.108(b) in 2003, MRC argues that *Wilkins* is still good law because the supreme court has not overruled its affirmance of the court of appeals's opinion. But the question of interest tolling was not appealed to the supreme court. *Wilkins II*, 47 S.W.3d at 491. Thus, the supreme court's affirmance does not add precedential weight to the San Antonio court's opinion in *Wilkins I*, and the repeal of the statute on which *Wilkins I* relied destroys its value as persuasive authority. On a more fundamental level, even if former finance code section 304.108(b) were still in effect, it applied only to wrongful death, personal injury, and property damage cases and thus would not justify tolling in this contract case.

Because no authority supports the tolling of prejudgment interest accruing under the Act, we hold that the trial court erred by failing to award AMX the

6

full amount of interest mandated by property code section 28.004. We must now calculate the amount of interest the trial court should have awarded under the Act on AMX's three invoices.

MRC paid AMX's first invoice within thirty-five days, so no interest accrued on that invoice. AMX's second invoice, dated November 11, 2002, was for $305,392.10. Interest accrued on the full invoice amount from December 17, 2002, until MRC made a partial payment of $200,000 on February 19, 2003, a span of sixty-four days. Sixty-four times the statutory interest rate (1.5% per month equals 18% per annum equals .05% per day) times the invoice amount is $9,638.68.

Interest continued to accrue on the $105,392.10 balance on the second invoice from February 20 until MRC made its $175,951 payment on March 10, 2003, a total of eighteen days, for additional interest of $935.54.

Interest began to accrue on AMX's third invoice, for $117,458.90, on March 8, 2003. When MRC made its $175,951 payment on March 10, 2003, the total due on the third invoice had accrued $115.85 in interest.

The $46,900 balance due on the third invoice continued to accrue interest until the trial court entered judgment on May 31, 2007, 1,542 days later, during which time an additional $35,664.56 in interest accrued.

7

Thus, the total prejudgment interest due to AMX under property code section 28.004 is $9,638.68 plus $935.54 plus $115.85 plus $35,664.56 for a total of $46,354.62. We sustain AMX's first issue, reverse the trial court's award of $16,792.38 in statutory interest, and render judgment in favor of AMX for statutory interest in the sum of $46,354.62.

## II.    Common law prejudgment interest

In its second issue, AMX argues that the trial court erred by failing to award it common law prejudgment interest on the $46,900 in contract damages awarded by the jury in addition to statutory interest under property code section 28.004. AMX contends that interest under section 28.004 is "penalty interest," not "prejudgment interest," and that a prevailing contractor may therefore recover both forms of interest.

Prejudgment interest serves two purposes. First, it compensates a claimant for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment. *Battaglia v. Alexander*, 177 S.W.3d 893, 907 (Tex. 2005); *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998); *see also* Tex. Fin. Code Ann. § 301.002(a)(4) (Vernon 2006) (defining "interest" as "compensation for the use, forbearance, or detention of money"). Second, it encourages settlement and removes incentives for delay. *Johnson & Higgins*,

8

962 S.W.2d at 529, 532 (citing *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 554–55 (Tex. 1985), *abrogated on other grounds by Johnson & Higgins*, 962 S.W.2d at 535). Compensation other than for the lost use of money is not "interest." *Battaglia*, 177 S.W.3d at 907. "One could call such compensation a windfall (from the claimant's perspective) or a penalty or fine (from the defendant's perspective), but it is not 'interest.'" *Id.* (noting that nothing in former article 4590i or the applicable versions of civil practice and remedies code sections 33.012 and 33.013 indicated that the legislature intended for prejudgment interest to either under- or over-compensate plaintiffs).

Whether a contractor may recover both 18% interest under the Prompt Payment to Contractors Act and common law prejudgment interest appears to be a question of first impression. Several courts have affirmed awards of interest under the Act as "prejudgment interest," apparently in lieu of common law prejudgment interest; none has held that a contractor may recover both. *See, e.g., RAJ Partners, Ltd. v. Darco Constr. Corp.*, 217 S.W.3d 638, 646–47 (Tex. App.—Amarillo 2006, no pet.); *All Seasons Window & Door Mfg., Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 497–99 (Tex. App.—Texarkana 2005, no pet.) (holding that provision in contract that "all deferred payments shall bear interest . . . at the maximum rate permitted by law" allowed contractor to

9

recover 18% prejudgment interest under the Act rather than the maximum 6% interest authorized by finance code section 302.002 in contracts that do not specify an interest rate); *Talley Const. Co. v. Rodriguez*, No. 01-03-01147-CV, 2006 WL 908180, at *11 (Tex. App.—Houston [1st Dist.] Apr. 6, 2006, no pet.) (mem. op. on reh'g) (analyzing contractor's entitlement to prejudgment interest under the Act according to rules governing award of common law prejudgment interest); *Henry Bldg., Inc. v. Milam*, No. 05-99-01400-CV, 2001 WL 246882, at *3–4 (Tex. App.—Dallas Mar. 14, 2001, pet. denied) (holding trial court erred by awarding contractor 6% prejudgment interest instead of 18% prejudgment interest under the Act and modifying judgment to include 18% interest).

Regardless of whether we deem interest awarded under the Act to be a "penalty," as AMX contends we must, it is, literally, prejudgment interest; section 28.004, captioned "Interest on Overdue Payment," provides that an unpaid amount bears "interest" until it is paid or until "the date a judgment is entered." Tex. Prop. Code Ann. § 28.004(b), (c). Further, interest under the Act fulfills both of the purposes of prejudgment interest: It compensates a claimant-contractor like AMX for the loss of use of the unpaid money, and it encourages settlement and removes incentives for delay. *See Johnson & Higgins*, 962 S.W.2d at 529, 532.

10

The legislative history of the Act, which AMX cites extensively, shows that the legislature's goal in enacting chapter 28 was consistent with the dual purposes of prejudgment interest. The Act's sponsor, Representative Mark Stiles, offered the testimony of Raymond Risk, who represented the American Subcontractor's Association of Texas. The Prompt Payment to Contractors Act: Hearings on Tex. H.B. 1429 Before the House Comm. on Bus. & Indus., 73rd Leg., R.S. 3–22 (March 23, 1993) (testimony of Raymond Risk). Risk testified that "the inability to get paid in a timely manner for work performed is the most serious problem facing subcontractors and suppliers today." *Id.* at 3:15–17. He said that "[s]ubcontractors depend on cash flow generated by the progress payments to meet their payrolls, to make loan payments, and to pay their suppliers." *Id.* at 4:6–8. To the extent that Risk's testimony reflects the legislature's intent in passing the Act, interest under the Act encourages payment, removes incentives for delay, and compensates contractors for the lost use of money needed to meet payrolls, make loan payments, and pay suppliers—the same goals served by common law prejudgment interest.

The fact that prejudgment interest under the Act is more than double the applicable rate of prejudgment interest gives contract debtors an additional incentive to pay promptly that would not exist but for the Act. *See Johnson & Higgins*, 962 S.W.2d at 532 (holding that the prejudgment interest rate in

11

contract cases is the same as the postjudgment rate); Tex. Fin. Code Ann. § 304.003(c) (Vernon 2006) (setting postjudgment interest rate at the prime rate on the date of computation as published by the Board of Governors of the Federal Reserve System); http://www.federalreserve.gov/releases/h15/data/Daily/H15_PRIME_NA.txt (last accessed January 7, 2009) (listing the prime rate on May 31, 2007—the date of the trial court's judgment—as 8.25%). Moreover, the fact that the Act's interest potentially accrues on sums to which common law prejudgment interest would not apply—as in this case, where common law prejudgment interest would accrue only on the $46,900 unpaid at the time of trial—is a further inducement to prompt payment. Thus, allowing a contractor like AMX to recover 18% prejudgment interest under the Act but not common law prejudgment interest compensates the contractor for the loss of use of the unpaid money and provides an added incentive for prompt payment that would not exist but for the Act. On the other hand, to allow a contractor to collect both interest under the Act and common law prejudgment interest would allow a double recovery of two kinds of interest designed to promote the same two goals, namely, compensation for loss of use and the prompt payment of debts.

AMX cites three cases in which courts have allowed both recovery of interest under other "prompt payment" statutes and common law prejudgment

12

interest. Those cases are distinguishable. In *Dunn v. Southern Farm Bureau Casualty Insurance Co.*, the Tyler court held that a claimant under former insurance code article 21.55 could recover both article 21.55's 18% per annum penalty on delayed insurance payments plus prejudgment interest on the claimant's personal injury damages (but not prejudgment interest on the 18% penalty). 991 S.W.2d 467, 470–71, 478–79 (Tex. App.—Tyler 1999, pet. denied); *see also Teate v. Mut. Life Ins. Co.*, 965 F. Supp. 891, 893 (E.D. Tex. 1997) (also applying former article 21.55). But unlike property code section 28.004, former insurance code article 21.55 provided that the 18% penalty on delayed insurance payment was "damages," not interest: "[T]he insurer shall pay *damages* . . . as provided for in Section 6 of this article. . . . [T]he insurer shall be liable to pay . . . in addition to the amount of the claim, 18 per cent per annum of the amount of the claim as *damages*." Act of May 27, 1991, 72nd Leg., R.S., ch. 242, § 11.03(a), 1991 Tex. Gen. Laws 939, 1045, *repealed by* Act of May 20, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 4107, 4138 (emphasis added). Property code section 28.004, on the other hand, specifically identifies the statutory interest as "interest." Tex. Prop. Code Ann. § 28.004.

Likewise, the statute at issue in *Marineau v. General American Life Insurance Co.*, former insurance code article 3.62, provided that a life insurance

13

company that failed to pay life insurance proceeds within thirty days of demand "shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve (12%) [percent] *damages* on the amount of such loss." 898 S.W.2d 397, 404 (Tex. App.—Fort Worth 1995, writ denied); Act of June 7, 1951, 52nd Leg., R.S., ch. 491, § 3.62, 1951 Tex. Gen. Laws 868, 920, *repealed by* Act of May 27, 1991, 72nd Leg., R.S., Ch. 242, § 12.01(2), 1991 Tex. Gen. Laws 939, 1133 (emphasis added). Because former insurance code articles 3.62 and 21.55 provided for the award of penalties as "damages," not "interest," *Dunn*, *Teate*, and *Marineau* are inapposite to the interpretation of property code section 28.004's provision for the award of interest.

For the forgoing reasons, we hold that a contractor who is entitled to collect 18% interest under the Act is not also entitled to common law prejudgment interest, and we overrule AMX's second issue.

## III.    AMX's attorney's fees

In its third issue, AMX argues that the trial court erred by failing to award AMX any attorney's fees because AMX prevailed on its breach of contract claim and submitted uncontroverted evidence of its attorney's fees. MRC responds that AMX failed to offer credible evidence to support the fees of its in-house counsel or retained local counsel, failed to prove the "cost plus overhead" of using in-house counsel, failed to prove that the services of local

14

counsel were necessary, and failed to segregate its attorney's fees attributable to AMX's breach of contract and Prompt Payment Act claims.

**A.    Evidence of AMX's attorney's fees**

The parties submitted the issue of attorney's fees to the trial court after the jury trial.  AMX eventually filed five affidavits in support of its attorney's fees claim, three sworn by its in-house counsel, David Kallus, and two sworn by its local counsel, Ed Cox.  MRC did not file controverting affidavits.

In his first, sixteen-page affidavit, filed on February 5, 2007, Kallus recited his education and work histories.  He stated that more than fifty percent of his legal work was in Tarrant and Dallas Counties in the preceding five years and that his "hourly rate of $200.00 per hour is considerably less than the prevailing market rate in Tarrant County for attorneys with my experience, qualifications, skill, and ability, and the time expended on this matter is reasonable."  He stated that in his opinion, all of the work performed was necessary and reasonable under the circumstances of the case.  Kallus averred that it was reasonable and necessary to hire local counsel to assist in the preparation and trial of the case.  Thirteen pages of his affidavit recite a blow-by-blow retelling—from Kallus's perspective—of the discovery process and pretrial motion practice.  Kallus concluded that AMX had incurred reasonable and necessary attorney's fees of $157,085.15 through trial.  Kallus attached

15

to his affidavit sixteen pages of time entries reflecting work performed on the case through the end of trial. The time sheet does not reflect dollar charges for each entry, but it recites a total of 646.83 hours and an "amount to be billed" of $129,366.67, which works out to $200.00 per hour.

In his second, nine-page affidavit, filed on February 12, 2007, Kallus described the claims, affirmative defenses, motions, and responses to motions MRC filed during the litigation, averred that "the issues raised by [AMX's] claims for affirmative relief became inextricably intertwined with the issues raised by [MRC's] pleading," and faulted MRC for delaying the trial and running up the legal fees.

In his third affidavit—a single page filed on February 22, 2007—Kallus averred that he was in-house counsel for AMX and received an annual salary (facts not disclosed in his prior affidavits). Kallus stated, "The fair market value of legal services provided by an attorney in the Dallas/Fort Worth Metroplex with my experience, qualifications, credentials, and skill is between $300.00 and $350.00 per hour."

Cox's first affidavit was filed on February 7, 2008. He averred that Kallus retained his firm as local counsel to assist with discovery and trial. Cox stated that "Kallus's hourly rate of $200 per hour is reasonable and, in fact, is below the market rate for an attorney of his experience, qualifications, and skills

16

in the Metroplex." He said that his own firm devoted 153.10 hours of work to this case, worth $27,718.50, and that the services were necessary and the fees "appropriate." Cox attached to his affidavit a time summary sheet showing work performed by date and the time and charge for each task.

In his second affidavit, dated February 22, 2007, Cox stated that if AMX had hired outside counsel in the Metroplex with the same experience, qualifications, and skills as Kallus, "AMX could reasonably be expected to have been charged between $300 and $350 per hour." He further opined that "a reasonable attorney fee for the work performed by Mr. Kallus as reflected in his time sheet . . . is between $194,049.99 and $226,391.66."[2]

### B.    The trial court's findings and conclusions

In its findings of facts and conclusions of law, the trial court made the following findings and conclusions regarding AMX's attorney's fees:

FINDINGS OF FACT

. . . .

3.    [AMX] failed to prove by a preponderance of the credible evidence  that attorney's fees were actually incurred in this case.

---

[2] The record also shows that MRC's counsel billed MRC at least $120,000 in attorney's fees between December 2003 and February 2007 at the rate of $205.00 per hour.

4. [AMX] failed to prove by a preponderance of the credible evidence that there was any attorney's fee agreement between [AMX] and its lead counsel.

5. [AMX] failed to prove by a preponderance of the credible evidence that it was necessary or reasonable to incur attorney's fees for local counsel.

6. [AMX] failed to prove by a preponderance of the credible evidence that the fees requested by [AMX] were reasonable.

7. [AMX] failed to prove by a preponderance of the credible evidence that fees requested by [AMX] were necessary.

8. The fees requested by [AMX] were excessive.

9. [AMX] failed to segregate the fees relating to the single claim upon which it prevailed from the fees relating to the numerous claims upon which it failed to prevail.

. . . .

CONCLUSIONS OF LAW

. . . .

5. [AMX's] claim for attorney's fees is excessive, unreasonable and without sufficient evidentiary basis to support an award of attorney's fees.

6. [AMX's] claim for attorney's fees fails because [AMX] failed and refused to segregate attorney's fees incurred in connection with claims upon which [AMX] prevailed from attorney's fees incurred in connection with other claims.

7. An award of attorney's fees to [AMX] would not be equitable or just.

8. [AMX] is not entitled to recover attorney's fees.

18

**C.     Discussion**

As a general rule, attorney's fees are not recoverable in Texas unless allowed by contract or statute. *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 817 (Tex. 2006). In this case, attorney's fees are authorized by the contract between AMX and MRC, which provides that "[i]n the event payment is not made as outlined herein, [MRC] agrees to pay all costs of collection and attorney's fees incurred by [AMX]; by the Prompt Payment to Contractors Act, Tex. Prop. Code Ann. § 28.005(b); and by civil practice and remedies code section 38.001, which provides that "[a] person may recover reasonable attorney's fees . . . if the claim is for . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 2008). We will focus our analysis on attorney's fees under section 38.001.

An award of reasonable attorney's fees is mandatory under section 38.001 if there is proof of the reasonableness of the fees. *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 683 (Tex. App.—Fort Worth 1998, pet. denied). The amount of the award lies within the discretion of the court, but it does not have the discretion to deny attorney's fees if they are proper. *Hassell Constr. Co. v. Stature Commercial Co.*, 162 S.W.3d 664, 668 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *see also Ulico Cas. Co. v. Allied Pilots Assoc.*, 187 S.W.3d 91, 109–110 (Tex. App.—Fort Worth 2005, no

19

pet.) ("A trial court has discretion in fixing the amount of attorney's fees, but it has no discretion to entirely deny attorney's fees established under section 38.001."), *rev'd on other grounds*, 262 S.W.3d 773 (Tex. 2008). When a claim for attorney's fees is based on chapter 38, it is presumed that the usual and customary attorney's fees are reasonable, although that presumption may be rebutted. Tex. Civ. Prac. & Rem. Code Ann. § 38.003 (Vernon 2008).

Factors the trier of fact should consider in determining the amount of reasonable attorney's fees include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (quoting Tex. Disciplinary R. Prof'l Conduct

1.04, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 2005) (Texas State Bar R. art. X, § 9)).

### 1. In-house counsel's fees

### a. Market value versus cost-plus value

AMX argues that in-house counsel's fees should be calculated at the market rate for outside counsel. MRC contends that in-house fees should be calculated under a "cost-plus" method that determines the claimant's actual cost of employing in-house counsel. Texas courts have written surprisingly little about the recovery of in-house attorney's fees. The first district has held that a successful claimant may recover attorney's fees for the legal services of in-house counsel. *Tesoro Petroleum Corp. v. Coastal Ref. & Mktg., Inc.*, 754 S.W.2d 764, 766 (Tex. App.—Houston [1st Dist.] 1988, writ denied) (holding claimant in contract dispute entitled to recover in-house attorney's fees equal to 10% of damages); *see also Beckstrom v. Gilmore*, 886 S.W.2d 845, 847 (Tex. App.—Eastland 1994, writ denied) ("Appellant cites no authority that adds the requirement [to civil practice and remedies code section 38.002] that the claimant must be represented by another person. We decline to add such a requirement."). But no Texas court has decided how to calculate in-house counsel's fees on an hourly basis.

The California supreme court considered the same question in *PLCM Group v. Drexler* and held that in-house counsel's fees should be calculated at market value. 997 P.2d 511, 520 (Cal. 2000). PLCM, an administrator of legal malpractice insurance policies, sued Drexler, an attorney, for reimbursement for funds expended defending Drexler against a legal malpractice claim. *Id.* at 514. PLCM was represented by in-house counsel employed by its parent company. *Id.* The trial court found in favor of PLCM and awarded it attorney's fees for the service of in-house counsel calculated at the prevailing hourly market rate for attorneys of comparable experience. *Id.*

After holding that PLCM could recover its in-house attorney's fees, the California supreme court held that the trial court properly calculated the fees based on their market value, and it specifically rejected Drexler's argument that the trial court erred "because it did not use a so-called cost-plus approach, based on a precise calculation of the actual salary, costs, and overhead of in-house counsel." *Id.* at 517, 519. The court reasoned that the market-value and cost-plus methods may reflect many of the same factors because "prevailing market rates necessarily take into consideration such factors as salaries, overhead, the costs of support personnel, and incidental expenses." *Id.* at 520. But it noted that the market value approach has the virtue of being predictable for the parties and easy to administer, while the cost-plus approach,

22

in addition to being cumbersome, intrusive, and costly to apply, may distort the incentives for settlement and reward inefficiency. *Id.*

Courts in other jurisdictions have likewise concluded that the market value method is the appropriate method for calculating in-house counsel's attorney's fees. *See, e.g., Balkind v. Telluride Mountain Title Co.,* 8 P.3d 581, 588 (Colo. App. 2000) ("Salaried and public interest attorneys should be awarded attorney fees based on the prevailing market rate rather than a 'cost-plus' approach focusing on the attorney's salary."); *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Cartage Co.,* 76 F.3d 114, 115–16 (7th Cir. 1996) (holding pension fund represented by in-house counsel entitled to recover attorney's fees at market value and rejecting argument that awarding market-value fees to entity represented by in-house counsel promoted fee-splitting with a nonlawyer because attorney's fees awards always belong to the litigant, not the lawyer, regardless of how the court calculates the fee); *Cottman Transmission Sys., Inc. v. Martino*, Nos. CIV.A. 92-7245, CIV.A. 92-2131, CIV.A. 92-2253, 1993 WL 541680, at *15 (E.D. Pa. Dec. 22, 1993) ("The Third Circuit has indicated that there is nothing improper about a market rate calculation for attorney fee awards for salaried in house counsel."), *vacated on other grounds*, 36 F.3d 291 (3rd Cir. 1994); *Metro. Mortg. & Secs. Co., Inc. v. Becker*, 825 P.2d 360, 364 & n.3 (Wash. App. 1992) (noting other courts'

23

concerns over applying the market value approach and identifying the cost-plus method as an alternative, but holding that the starting point for making an award of attorney's fees is the lodestar method and that the burden of justifying a deviation from the lodestar amount is on the party proposing the deviation); *Milgard Tempering, Inc. v. Selas Corp of Am.*, 761 F.2d 553, 558 (9th Cir. 1985) (instructing district court on remand to examine the "modern trend" toward calculating fees based on the market rate to predict Washington law); *see also Blum v. Stenson*, 465 U.S. 886, 892–94, 104 S. Ct. 1541, 1545–47 (1984) (holding nonprofit legal aid organization that represented prevailing Civil Rights Act litigant was entitled to recover attorney's fees calculated under prevailing market rate rather than cost-related basis, even if the fee so calculated exceeded the salaries and expenses of staff counsel); *Molano v. State*, 262 S.W.3d 554, 557 & n.1 (Tex. App.—Corpus Christi 2008, no pet. h.) (affirming award of attorney's fees calculated under market value method to State under DTPA for legal work performed by assistant attorney general).

Other jurisdictions, on the other hand, have rejected the market value method in favor of the cost-plus method. *See, e.g., Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, 1 P.3d 1095, 1107 (Utah 2000); *PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1570 (Fed.

Cir. 1988) (noting in dicta that "in this circuit reasonable rates for in-house counsel may be calculated on cost plus overhead"); *Dana Corp. v. Nok, Inc.*, No. 86-CV-74903-DT, 1988 WL 156807, at *4 (E.D. Mich. 1988) (same); *see also In re Stewart*, Nos. 00-00046, 02-10020, 2004 WL 3130573, at *16 (Bankr. D. D.C. Nov. 10, 2004) (holding contract provision awarding attorney's fees "incurred" by prevailing party precluded application of market value method to calculate in-house counsel's fees).

In *Softsolutions, Inc.*—coincidentally handed down just eleven days after the California supreme court's *PLCM* opinion—the Utah supreme court held, "We are convinced that a cost-plus rate is the more reasonable measure of attorney fees to in-house counsel, and is consistent with the public policy that the basic purpose of attorney fees is to indemnify the prevailing party and not to punish the losing party by allowing the winner a windfall profit." 1 P.3d at 1107. But in another, earlier case, the California court rejected a similar argument that the market value method creates a windfall for a prevailing *plaintiff* and noted that calculating fees at less than market value creates a windfall for the losing *defendant*. *Serrano v. Unruh*, 652 P.2d 985, 999 (Cal. 1982).

We are persuaded by the logic of those jurisdictions that apply the market value method to calculate in-house counsel's attorney's fees. The market value

25

method has the virtue of being predictable for the parties and easy to administer. *See PLCM Group, Inc.*, 997 P.2d at 520. It prevents a losing defendant from benefitting from the prevailing party's decision to control its own costs by employing in-house counsel. *See Serrano*, 652 P.2d at 999. Moreover, the market value method is consistent with the factors Texas courts consider when assessing attorney's fees, including the fee customarily charged in the locality for similar legal services. *See Arthur Andersen & Co.*, 945 S.W.2d at 818. We therefore hold that the appropriate method by which to calculate in-house counsel's attorney's fees is the market value method.

### b. Evidence of in-house counsel's fees

Having determined that the market value method applies to the calculation of AMX's in-house counsel's attorney's fees, we now turn to the record to determine whether, as AMX argues, the trial court's findings of fact are contrary to the great weight and preponderance of the evidence.

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Andersen v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994). When reviewing an issue asserting that a

finding is "against the great weight and preponderance" of the evidence, we must consider and weigh all of the evidence and set aside the finding only if the evidence is so weak or the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). A court of appeals cannot make original findings of fact; it can only "unfind" facts. *Tex. Nat'l Bank v. Karnes,* 717 S.W.2d 901, 903 (Tex. 1986); *Zeptner v. Zeptner*, 111 S.W.3d 727, 734 (Tex. App.—Fort Worth 2003, no pet.) (op. on reh'g). Conclusions of law may not be challenged for factual sufficiency, but they may be reviewed to determine their correctness based upon the facts. *Citizens Nat'l Bank v. City of Rhome*, 201 S.W.3d 254, 256 (Tex. App.—Fort Worth 2006, no pet.); *Dominey v. Unknown Heirs and Legal Representatives of Lokomski*, 172 S.W.3d 67, 71 (Tex. App.—Fort Worth 2005, no pet.).

Although the uncontroverted testimony of an interested witness generally does nothing more than create a fact issue, such testimony is taken as true as a matter of law if it is not contradicted by any other witness or by attendant circumstances and is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion on it. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (holding uncontroverted testimony of attorney's fees conclusively established right to

27

recover fees as a matter of law and that trial court abused its discretion by awarding only $150 in fees). This exception to the interested witness rule is especially true when the opposing party has the means and opportunity of disproving the testimony if it is not true and fails to do so. *Id.* (quoting *Anchor Cas. Co. v. Bowers*, 393 S.W.2d 168, 169–70 (Tex. 1965)).

The only evidence before the trial court was Kallus's and Cox's affidavits. With regard to the factors set out in *Arthur Andersen*, Kallus's affidavits and time records recited the time and labor required to represent AMX, the fee customarily charged in the locality for similar legal services, the amounts involved, Kallus's experience and ability, and the reasonableness and necessity of the fees. *See Arthur Andersen & Co.*, 945 S.W.2d at 818. Cox's affidavits likewise identified the fees customarily charged by an attorney of Kallus's experience, qualifications, and skills in the Metroplex. Both Kallus and Cox testified that the market value of Kallus's time was $300 to $350 per hour. This evidence was uncontroverted, and Kallus's and Cox's affidavit testimony was clear, direct, positive, and free from inconsistency. *See Ragsdale*, 801 S.W.2d at 888. MRC had the opportunity and means to disprove or at least controvert their testimony if the testimony was not true. *See id.* It failed to do so. Thus, Kallus's and Cox's testimony established as a matter of law the necessity of the legal work performed by Kallus, the market value range ($300

28

to $350 per hour) of his services, and the reasonableness of fees requested by AMX.

We now examine the trial court's findings of fact in light of the uncontroverted evidence. The trial court found that AMX failed to prove that its requested fees were reasonable and that its requested fees were excessive. But Kallus's uncontroverted testimony establishes that the fees were both reasonable and necessary, and Kallus's and Cox's uncontroverted testimony establish the market value of Kallus's services.[3] Therefore, these findings were contrary to the great weight and preponderance of the evidence. Likewise, the trial court's conclusion of law that AMX's claim for attorney's fees is excessive, unreasonable, and without sufficient evidentiary basis to support an award of attorney's fees is incorrect in light of the uncontroverted evidence.

The trial court also found that AMX failed to prove the existence of an attorney's fee agreement between it and Kallus and that it actually incurred attorney's fees. The existence of a fee contract and proof of fees actually incurred or paid are not prerequisites to the recovery of attorney's fees in Texas. *See, e.g., Beckstrom*, 886 S.W.2d at 847 (holding an attorney representing himself pro se may recover attorney's fees under Chapter 38 of

---

[3] MRC argues that notwithstanding the evidence, AMX's fees are excessive because this was a simple case and the amount of actual damages was never in dispute. The clerk's record contradicts this contention; it appears from the pleadings and motions MRC filed in the trial court that MRC vigorously resisted liability and asserted multiple defenses and affirmative claims for relief.

the civil practice and remedies code); *Brown v. Comm'n for Lawyer Discipline*, 980 S.W.2d 675, 683–84 (Tex. App.—San Antonio 1998, no writ) (holding state bar represented by private lawyers on a pro bono basis may recover reasonable attorney's fees); *Tuberquia v. Jamison & Harris*, No. A14-91-00055-CV, 1991 WL 260344, at *2 (Tex. App.—Houston [14th Dist] Dec. 12, 1991, no writ) (not designated for publication) (holding law firm represented by one of its own attorneys in suit to collect legal fees entitled to recover attorney fees for the time and effort expended); *see also Campbell, Athey & Zukowski v. Thomasson*, 863 F.2d 398, 400–01 (5th Cir. 1989) (applying Texas law and holding law firm that sued client to collect unpaid legal fees and that was represented by "an attorney who also happened to be a salaried member of the firm" could recover attorney's fees under Chapter 38, just as a corporation may recover fees for in-house counsel); *but see Simmons v. Kuzmich*, 166 S.W.3d 342, 350 (Tex. App.—Fort Worth 2005, no pet.) (holding, without citing any authority, that admission of attorney who was represented by his own law firm that neither he nor anyone from his office was billing or incurring fees and that he only "lost some time from the office" precluded award of attorney's fees). Thus, the trial court's findings that AMX failed to prove the existence of a fee contract between itself and Kallus and the actual incurrence of fees are irrelevant to AMX's right to recover attorney's fees.

### c. Segregation

Lastly, the trial court found and concluded that AMX was not entitled to recover its fees because it "failed to segregate the fees relating to the single claim upon which it prevailed from the fees relating to the numerous claims upon which it failed to prevail."

Parties seeking attorney's fees under Texas law "have always been required to segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). The supreme court recognized an exception to this rule in *Stewart Title Guaranty Co. v. Sterling*: attorney's fees need not be segregated when "the fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts." 822 S.W.2d 1, 11–12 (Tex. 1991). But in *Chapa*, the supreme court held that "[t]o the extent *Sterling* suggested that a common set of underlying facts necessarily made all claims arising therefrom 'inseparable' and all legal fees recoverable, it went too far" and flooded the courts of appeals with claims that recoverable and unrecoverable fees are inextricably intertwined. 212 S.W.3d at 312. The supreme court therefore held as follows:

> Accordingly, we reaffirm the rule that if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees. Intertwined

31

facts do not make tort fees recoverable; *it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated*. We modify *Sterling* to that extent.

*Id.* at 313–14 (emphasis added). It may often be impossible to state as a matter of law the extent to which certain claims can or cannot be segregated; the issue is more a mixed question of law and fact for the jury, but

> [t]here may, of course, be some disputes about fees that a trial or appellate court should decide as a matter of law. For example, to prevail on a contract claim *a party must overcome any and all affirmative defenses* (such as limitations, res judicata, or prior material breach), *and the opposing party who raises them should not be allowed to suggest to the jury that overcoming those defenses was unnecessary*.

*Id.* at 313, 314 (emphasis added). When segregation is required, a claimant's failure to segregate fees does not mean that the claimant cannot recover any fees; unsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be, and remand is required to calculate the segregated award. *Id.* at 314.

In this case, the threshold question is whether AMX was required to segregate its fees. AMX's original, first amended, and second amended petitions all claimed breach of contract, violation of the Prompt Payment to Contractors Act, and foreclosure of AMX's constitutional mechanic's lien. As we have already noted, attorney's fees are recoverable in connection with breach of contract and Prompt Payment to Contractors Act claims. To prevail

32

on a claim to foreclose a constitutional mechanic's lien, a lienholder must prove the performance of the labor and the existence of the debt. *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 107–08 (Tex. App.–San Antonio 2003, pet. denied) (quoting *Weimhold v. Hyde*, 294 S.W. 899, 900 (Tex. Civ. App.—Amarillo 1927, no writ)). A claim for breach of a contract for improvements also requires proof of performance of labor and the existence of a debt. *See Residential Dynamics, LLC v. Loveless*, 186 S.W.3d 192, 198 (Tex. App.—Fort Worth 2006, no pet.) (listing elements). A claim under the Prompt Payment to Contractors Act likewise requires proof of properly performed work and a failure to pay promptly. Tex. Prop. Code Ann. §§ 28.002 –.005. Thus, the discrete legal services needed to advance and prove AMX's constitutional lien claim were the same services required to advance and prove the breach of contract and Prompt Payment claims, and we hold as a matter of law that the claims are so intertwined that they need not be segregated. *See Chapa*, 212 S.W.3d at 313–14. Likewise, AMX was not required to segregate its fees for overcoming MRC's affirmative defenses to these claims. *See id.* at 314.

On the other hand, in its third amended petition, filed a week before trial, AMX asserted several additional claims for common-law conversion, violation

of the Texas Theft Liability Act,[4] breach of fiduciary duty, misapplication of trust funds, imposition of a constructive trust, foreclosure of its equitable lien, and money had and received. The trial court did not submit these causes of action to the jury. Therefore, AMX may not recover attorney's fees with regard to any of them. Because AMX did not segregate its fees, we cannot determine from the record before us how much work Kallus performed to advance these causes of action nor whether they are so intertwined with the breach of contract and Prompt Payment Act claims that the fees need not be segregated. *See id.*

MRC argues that because AMX did not segregate its fees after MRC objected to the failure to segregate in the trial court, AMX is not entitled to recover any fees at all, relying on a statement in *Green International, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997), that "[a] failure to segregate attorney's fees in a case containing multiple causes of action, only some of which entitle the recovery of attorney's fees, can result in the recovery of zero attorney's fees." The court did not explain the circumstances under which the failure to segregate would result in a recovery of zero fees, *see id.*, and the word "can" does not mean "will" or "must." Moreover, *Solis* predates *Chapa*, where the supreme court held that a claimant's failure to segregate fees does

---

[4] *See* Tex. Civ. Prac. & Rem. Code Ann. § 134.005(a)(1), (b) (Vernon 2005).

not mean that the claimant cannot recover any fees; unsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be, and remand is required to calculate the segregated award. *Chapa*, 212 S.W.3d at 314. We therefore remand the issue of AMX's in-house attorney's fees to the trial court for a new trial.

### 2. Local counsel's fees

Most of the foregoing discussion applies to AMX's local counsel's fees, too. The trial court found, and MRC argues on appeal, that AMX failed to prove that local counsel's services were necessary because Kallus testified that he had considerable experience litigating in Dallas and Tarrant Counties. But both Kallus and Cox averred that local counsel's services were necessary, and MRC did not controvert his testimony. We therefore hold that the trial court's finding that AMX failed to prove "that it was necessary or reasonable to incur attorney's fees for local counsel" is against the great weight and preponderance of the evidence. Because the same segregation issue that requires a remand of Kallus's fees to the trial court for a new trial also applies to local counsel's fees, we remand local counsel's fees for a new trial.

We sustain AMX's third issue.

35

## IV.   Composite's attorney's fees

In its fourth issue, AMX argues that the trial court erred by failing to assess interpleader Composite Investments, Inc.'s attorney's fees against MRC.

When Composite purchased the hotel in 2004, MRC deposited $93,800—twice the amount of AMX's lien—into an escrow account for the benefit of the title insurance company to facilitate the sale.   AMX joined Composite as a defendant to enforce its lien, but later agreed to dismiss its lien with prejudice in exchange for Composite's depositing $93,800 into the trial court registry.   MRC alleges that Composite, which was not a party to the escrow contract, somehow induced the title company to transfer the escrow funds to the registry by making false representations (the nature of which MRC does not detail) and that Composite had no right to interplead the escrow funds into the court's registry.

After depositing the funds in the registry, Composite requested $17,930.39 out of the funds for its attorney's fees incurred in the interpleader proceeding.  The trial court carried the request until after trial.  After trial, MRC filed a brief in opposition to Composite's request for attorney's fees, arguing that Composite had no right to the impleaded funds.  AMX moved for an order compelling MRC to pay Composite's attorney's fees directly rather than out of the registry funds.  In its final judgment, the trial court ordered that $17,930.39 be released from the registry to Composite for its attorney's fees.

The Texas rule is that the innocent stakeholder in an interpleader is entitled to attorney's fees, to be paid out of the impleaded fund. *State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 803 (Tex. 2007); *U.S. v. Ray Thomas Gravel Co.*, 380 S.W.2d 576, 581 (Tex. 1964). AMX argues that the trial court should have ordered MRC to pay Composite's attorney's fees directly, quoting this court's opinion in *Foreman v. Graham* for the proposition that "the ultimate burden between rival claimants should fall on the party whose unsuccessful claim rendered the interpleader necessary." 693 S.W.2d 774, 778 (Tex. App.—Fort Worth 1985, writ ref'd n.r.e.). We note that AMX omitted the first half of the quoted sentence, which states, "Although the interpleader *may be entitled to have his attorney's fees deducted from the implead[ed] fund*, . . . ." *Id.* (emphasis added) (citing *Gen. Am. Life Ins. Co. v. Rodriguez*, 641 S.W.2d 264, 268 (Tex. App.—Houston [14th Dist.] 1982, no writ)). Moreover, in *Foreman*, the impleaded funds were $5,000, and the interpleader claimed $7,000 in attorney's fees. *Id.* We held that "the trial court properly taxed [the interpleader's] attorney's fees . . . against appellant, the losing party, as costs rather than taking the entire sum of attorney's fees out of the fund and depleting it entirely." *Id.* Depletion is not a factor in this case because the impleaded funds far exceed the attorney's fees awarded to Composite. Further, as MRC points out, MRC will bear the ultimate burden of Composite's fees because the money in the court registry was MRC's money

37

to begin with. We therefore hold that the trial court did not err by awarding attorney's fees to Composite out of the impleaded funds, and we overrule AMX's fourth issue.

## V. Repayment of funds to registry by MRC's attorneys

In its fifth issue, AMX asks this court to order MRC's attorneys to pay back into the trial court's registry $6,093.30 plus accrued interest that the trial court ordered released to MRC's attorney's trust account. The trial court released the funds in response to MRC's motion to release to it all of the funds remaining in the registry after payment of Composite's attorney's fees. In its order releasing $6,093.30 to MRC's attorneys, the trial court also ordered that the remaining $73,682.35 be retained in the court's registry. That sum approximates the total judgment awarded to AMX plus interest as of the date of the trial court's order. MRC argues that it originally escrowed the funds for the benefit of the title company, not AMX, and urges us to order the funds released to MRC.[5]

AMX cites *Northshore Bank v. Commercial Credit Corp.* for the proposition that this court should order MRC's counsel to repay the withdrawn funds to the registry. 668 S.W.2d 787, 790 (Tex. App.—Houston [14th Dist. 1984, writ ref'd n.r.e.). In that case, the fourteenth court noted that funds

---

[5] MRC did not file a cross-appeal requesting this relief. *See* Tex. R. App. P. 25.1(c).

deposited in the registry of the trial court are subject to the control and orders of the trial court and that the trial court in the exercise of its equitable powers may make such orders that it deems necessary to protect said funds. *Id.* The court held that upon reversal, the *trial court* could have ordered the withdrawn funds returned to the registry *or* enter judgment that the funds be recovered from the party wrongfully withholding them. *Id.* Thus, *Northshore* does not stand for the proposition that a court of appeals may order a party to return funds to the trial court's registry, and we find no case so holding. Moreover, *Northshore* relegates to the discretion of the trial court the decision of whether to order the funds repaid to the registry or to enter judgment for the funds against the party holding them. *Id.* In this case, the trial court retained in the registry an amount of money sufficient to pay the judgment it had rendered in favor of AMX at the time. We therefore hold that AMX has failed to show that the trial court abused its discretion by releasing the excess funds to MRC's counsel, and we overrule AMX's fifth issue.

## VI. Release of registry funds to AMX

In its sixth issue, AMX urges this court to order the trial court to release the registry funds to AMX. AMX's argument on this issue consists of one short paragraph with no citations to any legal authority. An issue unsupported by citation to any legal authority presents nothing for the court to review. *Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet.

39

denied), *cert. denied*, 543 U.S. 1076 (2005); *see also* Tex. R. App. P. 38.1(i) (providing that a brief must contain appropriate citations to authorities).  We therefore overrule AMX's sixth issue.

## Conclusion

Having sustained AMX's first and third issues and overruled its second, fourth, fifth, and sixth issues, we reverse those portions of the trial court's judgment awarding AMX tolled interest under the Prompt Payment to Contractors Act and denying AMX its attorney's fees; render judgment that AMX recover from MRC $46,354.62 in interest under the Prompt Payment to Contractors Act; and remand the issue of AMX's reasonable and necessary attorney's fees to the trial court for a new trial.  In response to AMX's motion for rehearing, we also remand for further proceedings the disposition of the funds in the trial court's registry; we deny all other relief AMX requested in its motion for rehearing.

ANNE GARDNER
JUSTICE

PANEL:  GARDNER and WALKER, JJ.

DELIVERED:  April 9, 2009

40