02-10-070-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00070-CV 

 

 


 
 
 In the Interest of C.D. and K.D., Children
 
 
  
 
 
  
 
 
 
 
  
  
  
 
 


----------

 

FROM THE 89th
District Court OF Wichita COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          Appellants
M.D. (Mother) and J.D. (Father) appeal the termination of their parental rights
to their children C.D. (Caitlin) and K.D. (Kristen).[2] 
Appellant A.A. (Grandmother)[3] appeals the termination
of her permanent managing conservatorship of Caitlin and Kristen.  A jury found
by clear and convincing evidence that Mother and Father had (1) knowingly
placed or knowingly allowed the children to remain in conditions or
surroundings that endangered their physical or emotional well-being and (2)
engaged in conduct or knowingly placed the children with persons who engaged in
conduct that endangers the children’s physical or emotional well-being; that
Mother constructively abandoned the children; and that termination of the
parent-child relationship would be in the children’s best interest.  See
Tex. Fam. Code Ann. § 161.001(1)(D), (E), (N), (2) (Vernon Supp. 2010).  The
jury also found that the children’s current foster parents (the Sullivans)
should be their permanent managing conservators.

          In
four issues, Father challenges the legal and factual sufficiency of the
evidence supporting the jury’s endangerment findings.  In six issues, Mother challenges
the legal and factual sufficiency of the evidence supporting the jury’s endangerment
findings and the finding that Mother constructively abandoned the children.  Neither
Mother nor Father challenges the jury’s finding that it would be in the
children’s best interest to be placed with the Sullivans.

Grandmother
challenges the trial court’s order terminating her conservatorship; the trial court’s
failure to submit a jury question on whether Grandmother should be named as
possessory conservator; the trial court’s denial of her motion to strike the
intervention of the Sullivans; and the termination of the parent-child
relationship of both Mother and Father.  Grandmother’s submission on appeal is
one paragraph containing no legal authorities or argument on her issues.  While
we note that Grandmother prepared her brief without the assistance of counsel, we
also recognize that pro se litigants must abide by the same standards as
licensed attorneys and comply with applicable laws and rules of procedure.  See
Wheeler v. Green, 157 S.W.3d 439, 444 (Tex. 2005) (stating that pro se
litigants “are not exempt from the rules of procedure” and suggesting that
“[h]aving two sets of rules—a strict set for attorneys and a lenient set for
pro se parties—might encourage litigants to discard their valuable right to the
advice and assistance of counsel”); Mansfield State Bank v. Cohn, 573
S.W.2d 181, 185 (Tex. 1978) (“Litigants who represent themselves must comply
with the applicable procedural rules, or else they would be given an unfair
advantage over litigants represented by counsel.”).

Texas
Rule of Appellate Procedure 38.1(i) states that an appellant's “brief must
contain a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record.”  Tex. R. App. P. 38.1(i).  Furthermore,
as a general rule, an appellate court will not consider an issue raised by an
appellant where the appellant fails to provide any legal argument to support
his claim.  See Hamilton v. Williams, 298 S.W.3d 334, 337 (Tex. App.—Fort
Worth 2009, pet. denied).  This is so because an issue unsupported by citation
to any legal authority presents nothing for the court to review.  AMX
Enters., L.L.P. v. Master Realty Corp., 283 S.W.3d 506, 525 (Tex. App.—Fort
Worth 2009, no pet.) (citing Strange v. Cont’l Cas. Co., 126 S.W.3d 676,
678 (Tex. App.—Dallas 2004, pet. denied (2005)).  Grandmother has failed to
adequately brief her issues and to preserve her complaints.  We therefore
overrule all of Grandmother’s issues.  We address Mother’s and Father’s issues
below.

I.  Factual
and Procedural Background

Mother was first married in 1999 when she was sixteen
years old.  Mother’s first child, Christopher, was born in 2002.  Grandmother
testified that she took care of Christopher because Mother “was not a
responsible mother.”  Child Protective Services (CPS) removed Christopher
because Mother’s brother, John, called them to report that Mother had put
Christopher (then two or three months old) in the front seat of her car and
“fishtailed” out of a driveway.  John and his wife Brenda took conservatorship
of Christopher.  Mother voluntarily relinquished her parental rights to
Christopher in 2006 because, according to Grandmother, “she felt that he had
been with them long enough that it wasn’t right to even try to get him back.”

Mother
remarried and had her second child, Katrina, in 2004.  About nine days after
Katrina was born, Mother dropped her after she had been drinking.  CPS removed
Katrina and placed her with Brenda and John.  Also in 2004, Mother moved to
Arkansas and passed two stolen checks with a total value of $610.  She was
placed on probation for four years.  Mother’s parental rights to Katrina were
terminated in 2007 and John and Brenda adopted Katrina in 2008.  John and Brenda
were also in the process of adopting Christopher when John died.

Mother
was pregnant with Caitlin when she met Father in 2005.[4]
 Father, who was twenty-eight years old at trial, started taking drugs at age fourteen
or fifteen.  By age sixteen, he was doing methamphetamines and LSD.  His first
arrest was at age twenty-two for forgery.  At the time of trial, Father had
been convicted of ten felonies.

Caitlin
was born in January 2006.  Between February 2006 and May 2007, Mother also
passed approximately twenty-three bad checks with a total value of $4,925.48.  In
April 2007, Mother stole Grandmother’s debit card and used it to make $2,071.84
in unauthorized purchases.

Kristen was born in January 2007.  The hospital kept
Kristen for about ten days to treat her for strep.  Before Kristen was released
to go home, Mother and Father were arrested.  Their roommate had reported to
the police that Father had been “up for a week on drugs” and had threatened to
beat her up.  Police found nine baggies of marijuana, which Father admitted to
smoking with Mother, and a digital scale.  Father also admitted that he used a
pipe found in the bathroom for smoking methamphetamine.  Father was convicted
of the possession of a controlled substance and drug paraphernalia, and sentenced
to five years and released on parole after ten months.  The possession charges
against Mother were dropped, but she went to prison for the fraudulent use of
Grandmother’s debit card and the violation of Arkansas’s Hot Check Law.  See
Ark. Code Ann. § 5-37-302 (2010).  Her probation for her first hot check
violation in 2004 was also revoked.  An Arkansas court gave Grandmother temporary
possessory conservatorship of Caitlin and Kristen after the parents were
arrested.  She returned to Texas with the children.

Mother
was released in April 2008 and came to Texas to live with Grandmother.  Mother
got a job but quit after about a month.  Instead of paying child support to
Grandmother as ordered by the Arkansas court, Mother used the money she earned
to move back to Arkansas to be with Father, leaving the kids with Grandmother
in Texas.  Grandmother testified that Mother stole some of her checks when she
left.

In
July 2008, Grandmother was arrested after leaving the children in a car while
she went into a grocery store.  The children were taken into custody by CPS and
CPS filed a petition to terminate Mother and Father’s parental rights.  A
hearing was held in August 2008, which both Mother and Father attended, but
they were unable to take the children back because of “financial issues.”  The
children were placed in an emergency shelter and three successive foster homes
before finally being placed with the Sullivans.[5]

In
September 2008, Father was arrested for possession.  He was found with .3 grams
of methamphetamine, ten grams of marijuana, one tablet of hydrocodone, and
twenty-four tablets of alprazolam.  He was convicted of possession of a
controlled substance and sentenced to five years in prison.  In October 2008,
Mother was not living at a stable address, which was a violation of her parole,
and she also returned to prison.

In
January 2009, CPS filed a permanency plan with the trial court in which it
stated that it was in the children’s best interest that the Sullivans be
granted permanent possessory conservatorship.  The termination trial was held
in January 2010.  Father, who was released on parole, and Grandmother attended,
and Mother, who was still incarcerated in Arkansas, appeared by counsel.  The
jury found that Mother and Father’s parental rights should be terminated under section
161.001 of the family code and awarded permanent possessory conservatorship to
the Sullivans.  This appeal followed.

II.  Legal and Factual Sufficiency

Both
Mother and Father complain that the evidence presented at trial is legally and
factually insufficient to support the trial court’s termination of their
parental rights under section 161.001 of the family code.

CPS argues
that because Mother did not file a motion for new trial in the trial court,
Mother failed to preserve her factual sufficiency challenge.  The family code
states that an issue is preserved through “a timely filed statement of the points
on which the party intends to appeal or in a statement combined with a motion
for new trial.”  See Tex. Fam. Code. Ann. § 263.405(i) (Vernon 2008). 
However, the rules of civil procedure also require a motion for new trial to
preserve factual insufficiency complaints in jury trials.  Tex. R. Civ. P.
324(b)(2); see In re M.S., 115 S.W.3d 534, 547 (Tex. 2003) (applying
Rule 324 to termination cases).  Mother timely filed a statement of points,
which addressed both her legal and factual sufficiency challenge, but she did
not file a motion for new trial.  Thus, she has not preserved her factual
sufficiency challenge.  We overrule Mother’s second, fourth, and sixth issues. 
We will review only her legal sufficiency challenge below.  See Tex. R.
Civ. P. 324.

A.      Standards of Review

A
parent’s rights to “the companionship, care, custody, and management” of his or
her children are constitutional interests “far more precious than any property
right.”  Santosky v. Kramer, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397
(1982); M.S., 115 S.W.3d at 547.  “While parental rights are of
constitutional magnitude, they are not absolute.  Just as it is imperative for
courts to recognize the constitutional underpinnings of the parent-child
relationship, it is also essential that emotional and physical interests of the
child not be sacrificed merely to preserve that right.”  In re C.H., 89
S.W.3d 17, 26 (Tex. 2002).  In a termination case, the State seeks not just to
limit parental rights but to erase them permanently—to divest the parent and
child of all legal rights, privileges, duties, and powers normally existing
between them, except for the child’s right to inherit.  Tex. Fam. Code
Ann. § 161.206(b) (Vernon 2008); Holick v. Smith, 685 S.W.2d 18, 20
(Tex. 1985).  We strictly scrutinize termination proceedings and strictly
construe involuntary termination statutes in favor of the parent.  Holick,
685 S.W.2d at 20–21; In re M.C.T., 250 S.W.3d 161, 167 (Tex. App.—Fort
Worth 2008, no pet.).

In
proceedings to terminate the parent-child relationship brought under section
161.001 of the family code, the petitioner must establish one ground listed
under subsection (1) of the statute and must also prove that termination is in
the best interest of the child.  Tex. Fam. Code Ann. § 161.001; In re J.L.,
163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established; termination
may not be based solely on the best interest of the child as determined by the
trier of fact.  Tex. Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533
(Tex. 1987).  In this case, the State alleged proof under subsections (D) and (E)
of section 161.001 of the family code as to Father, and subsections (D), (E),
and (N) as to Mother.  Sections (D) and (E) state that the court may order
termination of the parent-child relationship if the court finds that the parent
has either “knowingly placed or knowingly allowed the child to remain in
conditions or surroundings which endanger the physical or emotional well-being
of the child” or “engaged in conduct or knowingly placed the child with persons
who engaged in conduct which endangers the physical or emotional well-being of
the child.”  Tex. Fam. Code Ann. § 161.001(1)(D), (E).  Section (N) allows for
termination if the parent has constructively abandoned the child.  Id. §
161.001(1)(N).

Termination
decisions must be supported by clear and convincing evidence.  Id. §
161.001; see id. § 161.206(a) (Vernon 2008).  Evidence is clear
and convincing if it “will produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the allegations sought to be
established.”  Id. § 101.007 (Vernon 2008).  Due process demands
this heightened standard because termination results in permanent, irrevocable
changes for the parent and child.  In re J.F.C., 96 S.W.3d 256, 263 (Tex.
2002); see In re J.A.J., 243 S.W.3d 611, 616 (Tex. 2007)
(contrasting standards for termination and modification).

In
reviewing the evidence for legal sufficiency in parental termination cases, we
must determine whether the evidence is such that a factfinder could reasonably
form a firm belief or conviction that the grounds for termination were proven. 
In re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005).  We must review all the
evidence in the light most favorable to the finding and judgment.  Id. 
This means that we must assume that the factfinder resolved any disputed facts
in favor of its finding if a reasonable factfinder could have done so.  Id. 
We must also disregard all evidence that a reasonable factfinder could have
disbelieved.  Id.  We must consider, however, undisputed evidence even
if it is contrary to the finding.  Id.  That is, we must consider
evidence favorable to termination if a reasonable factfinder could, and
disregard contrary evidence unless a reasonable factfinder could not.  Id.

We must
therefore consider all of the evidence, not just that which favors the verdict. 
Id.  But we cannot weigh witness-credibility issues that depend on the
appearance and demeanor of the witnesses, for that is the factfinder’s
province.  Id. at 573, 574.  And even when credibility issues appear in
the appellate record, we must defer to the factfinder’s determinations
as long as they are not unreasonable.  Id. at 573.

In
reviewing the evidence for factual sufficiency, we must give due deference to
the factfinder’s findings and not supplant the judgment with our
own.  In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).  We must determine
whether, on the entire record, a factfinder could reasonably form a firm
conviction or belief that the parents violated subsection (D), (E), or (N) of
section 161.001(1).  Tex. Fam. Code Ann. § 161.001; C.H., 89 S.W.3d at
28.  If, in light of the entire record, the disputed evidence that a reasonable
factfinder could not have credited in favor of the finding is so significant
that a factfinder could not reasonably have formed a firm belief or conviction
in the truth of its finding, then the evidence is factually insufficient.  H.R.M.,
209 S.W.3d at 108.

“Endanger”
means to expose to loss or injury, to jeopardize.  Boyd, 727 S.W.2d at
533; In re J.T.G., 121 S.W.3d 117, 125 (Tex. App.—Fort Worth
2003, no pet.).  Under (E), the relevant inquiry is whether evidence exists
that the endangerment of the children’s physical well-being was the direct
result of the parents’ conduct, including acts, omissions, or failures to act. 
See J.T.G., 121 S.W.3d at 125; see also Tex. Fam. Code Ann. §
161.001(1)(E).  Additionally, termination under (E) must be based on more than
a single act or omission; the statute requires a voluntary, deliberate, and conscious
course of conduct by the parent.  J.T.G., 121 S.W.3d at 125; see
Tex. Fam. Code Ann. § 161.001(1)(E).  It is not necessary, however, that the
parents’ conduct be directed at the children or that the children actually
suffer injury.  Boyd, 727 S.W.2d at 533; J.T.G., 121 S.W.3d at
125.  The specific danger to the children’s well-being may be inferred from
parental misconduct standing alone.  Boyd, 727 S.W.2d at 533; In re
R.W., 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied).  To
determine whether termination is necessary, courts may look to parental conduct
occurring both before and after the children’s birth.  In re D.M.,
58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.).

B.      Sufficient
Evidence Supports Termination Under Section 161.001(E)

 

We
hold that legally and factually sufficient evidence supports the jury finding that
Father engaged in conduct that endangered the children’s physical well-being
and that legally sufficient evidence supports the jury finding that Mother engaged
in conduct that endangered the children’s physical well-being.

Neither
parent has ever paid child support or otherwise contributed money for the
children’s care.  After her release in 2008, Mother did not put her children
first by staying with Grandmother in Texas and earning money to pay for her
children’s care.  Instead what money Mother did make she used to move back to
Arkansas to be with Father, leaving the children with Grandmother in Texas. 
Mother also stole some of Grandmother’s checks when she left, with full
knowledge that Grandmother was using her own money to support the children.

Neither parent has provided stable and sufficient housing
for the children.  Instead of staying at Grandmother’s home with her children,
Mother returned to Arkansas to be with Father.  They were evicted from their
home because they could not pay their rent and Mother was homeless a few months
later, thereby violating her parole.  Father testified at trial that he was
unable to provide the children with a stable home because he had only recently
been released from prison.  He said, “At this time I don’t think it is wise for
me to have possession of my kids because of the fact that I don’t have a stable
home to put them in, and I believe that’s important.”

Both parents have had life-long battles with drug
addiction.  There was testimony that Mother was addicted to cocaine and
methamphetamine and that she smoked marijuana.  Father testified to using
marijuana, LSD, cocaine, and methamphetamine.  Although Father testified that
he is currently not addicted to drugs, he admitted that he had previously
discontinued using drugs during Mother’s pregnancy but began using again right
after Kristen’s birth.  The drugs were found in the bedroom that Mother and
Father shared with Caitlin.

Drug use and its effect on a parent's life
and his ability to parent may establish an endangering course of conduct.  In
re R.W., 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). 
Likewise, evidence of criminal conduct, convictions, and imprisonment prior to
the birth of a child will support a finding that a parent engaged in a course
of conduct that endangered the child's well-being.  J.T.G., 121 S.W.3d
at 133.  While imprisonment alone does not constitute a continuing course of conduct
that endangers the physical or emotional well-being of a child, it is a fact
properly considered on the issue of endangerment.  Boyd, 727 S.W.2d at
533–34.  The State need not show incarceration was a result of a course of
conduct endangering the child; it need only show incarceration was part of a
course of conduct endangering the child.  Id.  Thus, if the evidence,
including imprisonment, proves a course of conduct that has the effect of
endangering the child, the requirement of showing that the endangerment of the
child’s physical or emotional well-being was the direct result of the parent’s
conduct is met.  Id.

Mother
has been imprisoned three times.  Mother was arrested for the third time only
days after giving birth to Kristen and before Kristen was even released from
the hospital.  At the time of trial, Father was twenty-eight years old and had
been convicted of ten felonies.  Mother and Father’s incarceration had affected
their ability to ensure that their children were properly taken care of and
indicated a course of conduct that was endangering to the children.  Moreover, both
parents’ incarcerations prevented them from finding better living conditions
and financially supporting the children.  The evidence showed that Mother and Father’s
continued criminality had contributed to the dangerous environment in which the
children had lived.  See In re M.R., 243 S.W.3d 807, 819 (Tex.
App.—Fort Worth 2007, no pet.) (observing that father’s incarceration affected
his ability to ensure that his child was properly taken care of, prevented him
from finding better living conditions or providing financial support for the
child, and indicated a course of conduct that was endangering to his child). 
Each parent repeatedly committed criminal acts that subjected them to the
possibility of incarceration. While imprisonment alone is not a basis to
terminate parental rights, it is an appropriate factor to consider.  See In
re M.R.J.M., 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.).  Each
time these parents were jailed, they were absent from their children’s lives
and unable to provide a home or support, which negatively impacted the
children’s living environment and well-being.  Id.; see D.M., 58
S.W.3d at 812–13 (noting that mother’s frequent incarcerations affected her
ability to properly care for her children); M.R., 243 S.W.3d at 819; In
re C.L.C., 119 S.W.3d 382, 393 (Tex. App.—Tyler 2003, no pet.) (holding
that it is sufficient that the parent was aware of the potential for danger to
the child and disregarded that risk); In re U.P., 105 S.W.3d 222, 236
(Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding that the creation
of an “emotional vacuum” in the child's life by being absent for more than
twelve months due to incarceration was evidence of endangering the child’s
emotional well-being).  Mother could have been released in time to attend the
termination hearing, but her frequent misbehavior in prison delayed her
release.  See In re J.N.R., 982 S.W.2d 137, 143 (Tex.
App.—Houston [14th Dist.] 1998, no pet.) (affirming the termination of father’s
parental rights based in part on evidence that father continued to engage in
the criminal activity that resulted in his incarceration even after knowing his
parental rights were in jeopardy).  The CASA advocate testified that CASA
changed its plan from reunification to termination when it discovered that the
parents had misbehaved in prison so to as extend their confinement.  The
advocate said, “[W]e were coming on nine months, they were still incarcerated. 
I had learned they had done some things to make their incarceration even
longer.”

There
was much testimony regarding Mother’s selfish nature, that she’s “too prone to
care about what [she] wants instead of . . . what’s the best thing.” 
Grandmother stated that she did not think Mother showed respect for the process
of getting her children back.  Brenda, the guardian of Mother’s oldest child
and adoptive parent of Mother’s second child, testified that she doesn’t
believe Mother will ever be an effective parent.  Brenda testified that Mother
told CPS that Brenda had “kidnapped” the children that Brenda has custody of. 
Mother also alleged that Brenda had sexually assaulted Katrina when she was eight
months old.  Brenda testified that the accusations were unfounded and she was
never charged for anything.  Grandmother stated that the children receive no
benefit from having Mother or Father in their life at the moment.  As of the
date of trial, Grandmother’s husband (Grandfather) did not think Mother was
able to raise her children.  Grandmother testified that she thought Father was
a good father, but admitted that he had only been present in Caitlin’s life for
the first year.  She also described him as being a selfish person who makes bad
decisions.  Grandfather thought that Father was maturing, but as of the date of
trial, he was still unable to take the children.

We
hold there is legally and factually sufficient evidence that Father endangered
the children’s physical well-being and that there is legally sufficient evidence
that Mother endangered the children’s physical well-being.  We overrule Father’s
third and fourth issues and Mother’s third issue.  Because, along with a best
interest finding, a finding of only one ground alleged under section 161.001(1)
is necessary to support a judgment of termination, we need not address Mother
and Father’s remaining issues.  See Tex. R. App. P. 47.1; see also In
re E.M.N., 221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.); In
re S.B., 207 S.W.3d 877, 886 (Tex. App.—Fort Worth 2007, no pet.).

III. Conclusion

Having
overruled all of the appellants’ dispositive issues, we affirm the trial
court’s judgment.

 

 

LEE GABRIEL

JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; MEIER and GABRIEL, JJ.

 

DELIVERED:  May 5, 2011









          [1]See Tex. R. App. P. 47.4.





[2]We use aliases for all of
the children and all foster parents and adoptive parents throughout this
opinion.  See Tex. R. App. P. 9.8(b)(2).





[3]Grandmother is the
biological grandmother of Mother and adopted Mother when she was born.  She is
therefore both the grandmother and great-grandmother of the children.





[4]Father is not Caitlin’s
biological father.  He is the adjudicated father and is listed as her father on
her birth certificate.  Mother’s ex-husband, J.I., Caitlin’s presumed father,
and J.D.C., Caitlin’s alleged father, both had appointed counsel below and were
both dismissed from the suit in an agreed order.





[5]The Sullivans are Brenda’s
sister and brother-in-law.  Brenda is Mother’s deceased brother’s wife.