**Opinion issued April 30, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00322-CV

————————————

**MULCH MATTERS, INC. AND PRIME TREES, INC. D/B/A MULCH MATTERS, INC., Appellants/Cross-Appellees**

**V.**

**TORO ROJO, INC. D/B/A ACTION TRUCKING COMPANY, Appellee/Cross-Appellant**

---

**On Appeal from the County Civil Court at Law No. 2
Harris County, Texas
Trial Court Case No. 1155941**

---

## MEMORANDUM OPINION

This case arises from a contract dispute. Mulch Matters, Inc. and Prime Trees, Inc. d/b/a Mulch Matters, Inc. (collectively, "Mulch Matters") contracted with Toro Rojo, Inc. d/b/a Action Trucking Company ("Action Trucking") to perform hauling

services for a real estate development project. When a dispute arose concerning the amount owed to Action Trucking, Action Trucking sued Mulch Matters for breach of contract.

A jury awarded Action Trucking $86,973.50 in actual damages. The trial court signed a final judgment in favor of Action Trucking, reducing the damages to $74,453.50. The judgment took into account a credit of $12,520.00, prejudgment interest at the rate of 5% per year, attorney's fees in the amount of $80,000.00, court costs, and post-judgment interest. Mulch Matters appealed, and Action Trucking filed a cross appeal.

In six issues, Mulch Matters argues that: (1) the evidence is legally and factually insufficient to support the award of actual damages, (2) the evidence does not support the imposition of joint and several liability, (3) several jury charge errors require a new trial, (4) the evidence is legally and factually insufficient to support the jury's liability findings, (5) the trial court erred by setting the wrong date for accrual of prejudgment interest, and (6) the trial court erred by awarding prejudgment interest on attorney's fees.

Action Trucking seeks reformation of the judgment to reflect prejudgment interest in the amount of 1.5% per month, or 18% per year, as allowed by the Prompt

Payment Act.[1]   It also seeks a conditional award of appellate attorney's fees consistent with the parties' stipulation.

We modify the trial court's judgment in part, affirm as modified, and remand for the specific purpose of calculating prejudgment interest.

## Background

ATZ Environmental Solutions, LLC was responsible for clearing land for a real estate development in northwest Houston.  In connection with that project, ATZ subcontracted with Mulch Matters[2] to complete the following tasks: "Mulching and Hauling off all clearing and grubbing material" on 105 acres of the development project.

Mulch Matters bid, and ATZ agreed to pay, $1,700 per acre for a total of $178,500 for these services.  The owner of Mulch Matters, Richard Lance Bowe, testified that this bid was low because ATZ was a new customer and he hoped to obtain business from the company again in the future.

Bowe then reached out to Darren Smith with Action Trucking to provide the hauling services.  No written contract was executed, but they verbally negotiated a price of $110 per hour.  At trial, the parties disputed whether this $110 rate was a

---

[1]     TEX. PROP. CODE § 28.004.

[2]     This subcontract was between ATZ and "Prime Trees Inc. dba Mulch Matters."

3

flat rate for "gate-to-gate,"[3] as maintained by Action Trucking, or whether it was conditioned upon Action Trucking doing five loads per truck per day, as maintained by Mulch Matters.

Action Trucking sent a credit application to Mulch Matters to process the payments. From mid-October 2019, a few days after receiving the executed credit application from Mulch Matters, through early December 2019, Action Trucking performed hauling services for Mulch Matters. Throughout this time, Smith with Action Trucking and Bowe with Mulch Matters communicated regularly via text message and phone calls.

In November 2019, Smith and Bowe engaged in a text message discussion about the average time it was taking per load, and whether any adjustments could be made to the rate. Bowe informed Smith that Mulch Matters had a "budget of $200 per load" and asked if they could "work on a load price." Smith responded with "yes." No additional discussion of a change in price appears in the text exchange.

According to Smith, he informed Bowe that he had to clear any changes in price with the head office at Action Trucking. Smith did not get the approval, and he informed Bowe that there could be "no change." Bowe disputed this at trial,

---

[3]    Smith testified that "gate to gate" meant that "[f]rom the time the trucks leave [Action Trucking's] gate, they're on the clock until they get back to [Action Trucking's] gate."

4

testifying instead that he and Smith agreed in a phone conversation that the fees would be capped at $220 per load. Bowe agreed that there was no written documentation of any change in price.

As the job neared completion, Action Trucking sent invoices to Mulch Matters. But, by mid-December 2019, no payments were received. At that point, according to Smith, he met with Bowe and personally provided him with hard copies of the invoices. Bowe indicated he would go through the invoices and that "he had a dispute."

A month later, in January 2020, Action Trucking had still not received any payment from Mulch Matters. So, James Petrou, manager of operations who oversaw billing for Action Trucking, went to Mulch Matters' offices to retrieve a check. When he arrived, the receptionist at Mulch Matters provided him with an envelope that contained a check for $65,800, as well as "a folded-up bundle of all of the invoices that [Action Trucking] had sent Mulch Matters for the job."

According to Petrou, the check did not cover all the amounts that Action Trucking had invoiced and no one at Mulch Matters indicated that this was a partial payment. Action Trucking's billing department then reached out to Mulch Matters, which stated "they weren't gonna pay for the invoices as they were. They were gonna . . . pick a price . . . [of] $220 a load." Petrou testified that this was the first time that he had heard of a $220 per load price.

5

Bowe further testified that Mulch Matters determined the $65,800 figure by calculating the number of loads it had recorded as of that date—329—and multiplied it by $200. Bowe also testified that he withheld a "retainer" of about 10%, or $20, for each load.

Action Trucking invoiced Mulch Matters again by email in January and February 2020. When no additional payments were made, Action Trucking sent a demand letter to Mulch Matters requesting payment of the outstanding balance— $86,973.50—after the partial payment of $65,800.00 was applied. Receiving no response, Action Trucking then filed this lawsuit in June 2020 for breach of contract.

After the lawsuit was filed, Bowe asked Lorena Chavez, Mulch Matters' office manager, to audit the truck tickets to determine how many loads came into the facility. Mulch Matters determined that Action Trucking had hauled a total of 356 loads into Mulch Matters' facility. Multiplying 356 by the $220 per load, Mulch Matters determined that it owed Action Trucking a total of $78,320, of which $65,800 had already been paid. Accordingly, Mulch Matters issued a second check to Action Trucking in the amount of $12,520 for the remaining balance.[4]

Mulch Matters subsequently counterclaimed for "breach of contract or negligence," alleging that Action Trucking "breached a promise to perform transportation services without trucks being overturned" and that it may have been

---

[4] This check was sent in July 2021, after the lawsuit was filed.

negligent when two trucks overturned. Mulch Matters sought damages in the amount of $3,994.

As noted above, the jury returned a verdict in favor of Action Trucking and awarded $86,973.50 in contract damages. After multiple post-trial motions, the trial court signed the current final judgment reducing the damages to $74,453.50—to take into account Mulch Matters' additional payment of $12,520—and awarding prejudgment interest at the rate of 5% per year, attorney's fees in the amount of $80,000, court costs, and post-judgment interest.

## Sufficiency of the Evidence

In its first and fourth issues, Mulch Matters contends that the evidence is legally and factually insufficient to support the jury's findings of liability and damages. When both legal and factual sufficiency of the evidence challenges are raised on appeal, we must first examine the legal sufficiency of the evidence. *See City of Hous. v. Cotton*, 171 S.W.3d 541, 546 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

### *Standard of Review*

When an appellant challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate that no evidence supports the finding. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). We will sustain such a "no-evidence"

7

challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact; (2) that rules of law or evidence bar the Court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

In conducting our review, we credit favorable evidence if a reasonable factfinder could do so and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827. We consider the evidence in the light most favorable to the finding under review, and we indulge every reasonable inference that would support the finding. *Id.* at 822. Evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827.

When reviewing for factual sufficiency, we consider all the evidence supporting and contradicting the finding. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside the verdict only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). The jury, as factfinder, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

***Breach and Whether Mulch Matters' Breach was Excused***

In its fourth issue, Mulch Matters argues that the evidence is legally and factually insufficient to support the jury's liability findings in Questions 2 and 3. Question 2 asked: "Did Mulch Matters fail to comply with the terms of the parties' agreement?" Mulch Matters contends that the jury's answer of "yes" is not supported by legally or factually sufficient evidence because the evidence shows that Action Trucking was paid for its services in accordance with the parties' agreement, i.e., $220 per load.

Question 3 asked the jury: "Was Mulch Matters' failure to comply excused?" The question then provided jurors with three ways Mulch Matters' failure to comply could be excused:

> Failure to comply is excused if Mulch Matters paid all of the amounts owed under the parties' agreement.

> Failure to comply by Mulch Matters is excused by Action Trucking's previous failure to comply with a material obligation of the same agreement.

> Failure to comply by Mulch Matters is also excused by Action Trucking's fraud.

The court's charge then defined fraud and misrepresentation. The jury determined that Mulch Matters' failure to comply was not excused.

Mulch Matters argues that this finding is not supported by legally and factually sufficient evidence because Action Trucking:

(1) was paid for its services in accordance with the parties' agreement,

9

(2) breached the agreement at issue by failing to perform its services with the reasonable care, skill, expedience, and competence that reasonably competent members of the profession would exercise under similar circumstances; and

(3) committed fraud by refusing to honor the parties' agreement and by overstating the hours billed or by billing for time not legally chargeable to Defendants.

This is the extent of Mulch Matters' substantive argument with respect to the sufficiency of the evidence supporting the jury's answers to Questions 2 and 3. Although our supreme court has instructed that appellate courts should reach the merits of an issue whenever reasonably possible, to do so an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i); *see Weekley Homes, LLC v. Paniagua*, 646 S.W.3d 821, 827 (Tex. 2022) (citation omitted)

Stated differently, in order for an appellate court to be able to address an issue, the appealing party must argue the issue's substance with legal and record support. *See St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 214 (Tex. 2020). Failure to provide citations or argument and analysis as to an appellate issue may waive it. *See Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 500 (Tex. 2015).

Here, Mulch Matters' sufficiency challenges to these two jury findings consists of two paragraphs that have no citations to the record or the evidence, no citations to any legal authorities, and no legal analysis. Even under the most liberal view of our briefing rules, this is a bridge too far. We hold that Mulch Matters has

10

waived its fourth issue due to inadequate briefing. *See* TEX. R. APP. P. 38.1(i); *Ross*, 462 S.W.3d at 500.

We overrule Mulch Matters' fourth issue.

*Damages*

In its first issue, Mulch Matters argues that the jury's damages finding of $86,973.50, to Question 4, is not supported by legally and factually sufficient evidence. It contends that Action Trucking failed to present any competent evidence of the "reasonable, necessary, and customary cost of the goods and services delivered by Action Trucking" as instructed in this jury question.

According to Mulch Matters, Action Trucking had the burden to present some specific evidence of the reasonableness and necessity of the costs it sought to recover and, to do that, Action Trucking had to show more than just "the nature of the injuries, the character of and need for the services rendered, and the amounts charged therefor." *See McGinty v. Hennen*, 372 S.W.3d 625, 627 (Tex. 2012). And it argues that Action Trucking failed to do so.

To decide this issue, we must look to the language of Question 4. It asked the jury as follows:

**Question No. 4**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Action Trucking for its damages, if any, that resulted from such failure to comply?

Consider the following elements of damages, if any, and none other:

Unpaid amounts owed pursuant to the Contract.

The reasonable, necessary, and customary cost of the goods and services delivered by Action Trucking, if any, that Mulch Matters agreed to pay for, less any offsets, payments, or credits. Do not include in your answer any amount that you find Action Trucking could have avoided by the exercise of reasonable care.

Do not add any amount for interest on damages, if any.

Answer in dollars and cents for damages, if any.

Answer: _____ 86,973.50

Question 4 embodies two different measures of contract damages—(1) the unpaid amounts owed pursuant to the contract here, and (2) the "reasonable, necessary, and customary cost of the goods and services delivered by Action Trucking, if any, that Mulch Matters agreed to pay for, less any offsets, payments, or credits." But it asked the jury to make just a single damages finding.

As a result, we have no way of knowing the exact amount that was awarded for either, or any, of the two measures of contract damages. The Texas Supreme Court in *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213 (Tex. 2019), was faced with a similar situation.

In *Bombardier*, the plaintiffs, as the buyers of an aircraft, sued the seller, Bombardier, for breach of contract, breach of express warranty, and fraud based on Bombardier's failure to disclose to the plaintiffs that the aircraft's left engine had been installed on two other aircrafts and designated as "repaired" before being

12

installed on the plaintiffs' aircraft. *Id.* at 218. The plaintiffs' aircraft appraisal expert testified that the plaintiffs had incurred $2,694,160 in damages, which included the diminution in value of the aircraft due the repaired engine plus a reduction for loss of value of the engine's warranties. *Id.* at 227.

The jury found in favor of the plaintiffs on both the breach of contract and fraud claims, and the plaintiffs elected to recover on the fraud claim. *Id.* at 219. Question four of the court's charge had asked the jury to determine "what sum of money would reasonably compensate the plaintiffs for Bombardier's fraud," and it contained a single answer blank. *Id.* at 228. The jury awarded $2,694,160 in actual damages for fraud. *Id.*

On appeal, Bombardier argued that the award of $2,694,160 in fraud damages was based solely on the expert's conclusory opinion that the aircraft had sustained a diminution in value due to its engine history and a loss in the value of the engine's warranty. *Id.* at 222. The diminution in value, according to the expert, "was $2,694,160—$1,985,000 excluding the [$709,160] reduction for loss of warranty, which is about 10% of the purchase price." *Id.* at 227. The supreme court held that the expert's testimony was not conclusory. *Id.* at 228.

Turning to Bombardier's no-evidence challenge to the "$709,160 in damages for the lost engine warranties," the supreme court explained:

> Question four of the jury charge asked what sum of money would reasonably compensate the plaintiffs for Bombardier's fraud, and it

13

contained a single answer blank. [The expert] provided the jury with a suggested sum of $2,694,160, which included both the diminution in value plus a reduction for lost value in the warranties. But the jury was not asked to provide specific dollar amounts to award damages for diminution in value and for lost value in warranties. The parties agreed to this damages question and the single answer blank, and neither party objected. As a consequence, we cannot determine the exact portion of the damages award that compensated the plaintiffs for warranty issues, and we cannot separate it from diminution-in-value damages, which we have already determined were supported by [the expert's] non-conclusory testimony. . . . Therefore, we do not have the ability to review the legal sufficiency of the evidence to support any particular award of damages to compensate for fraud as it relates to the engine warranties without disturbing the jury's entire answer to question four.

*Id.* at 228–29. The court thus "decline[d] to disturb the entire actual damages award under jury charge question four because damages for diminution in value and for loss in warranty value were combined into a single question with one answer blank, to which the parties agreed." *Id.* at 233–34.

The same is true here. Action Trucking presented the jury with a suggested figure of $86,973.50. That amount was based on invoices detailing a certain number of hours billed at $110 per hour, which, according to Action Trucking, was the price to which the parties had agreed. But the jury was not asked exclusively to determine damages based on a single measure of damages. Instead, Question 4 asked the jury to consider two separate measures of damages and provided just a single answer blank. Neither party objected to Question 4 as given. And no party raised the

14

specific objection that the damages question incorporated two measures of damages in a single broad form question.[5]

Thus, even if we were to conclude that there is no evidence of reasonable and necessary costs to support the jury's damages award, as Mulch Matters argues we must, that would not end our analysis. Rather, like in *Bombardier*, because of the way Question 4 was presented to the jury, we cannot determine whether the jury's damages finding is based on what it determined to be the reasonable and necessary cost of Action Trucking's services *or* the unpaid amounts owed under the contract *or* some combination of both.

As a result, we do not have the ability to conduct a meaningful legal sufficiency review of the damages finding based on any particular measure of damages. We must therefore reject Mulch Matters' no evidence challenge to the damages finding in Question 4. *See Zoanni v. Hogan*, __ S.W.3d __, 2023 WL 8939267, at *26–28 (Tex. App.—Houston [1st Dist.] Dec. 28, 2023, no pet. h.).

---

[5] No party raises any issue of charge error with respect to Question 4. Therefore, we express no opinion on the validity of the comingled damages measures in Question 4. *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex. 2000) (holding that "when a trial court submits a single broad-form liability question incorporating multiple theories of liability, the error is harmful and a new trial is required when the appellate court cannot determine whether the jury based its verdict on an improperly submitted invalid theory"); *see also Burbage v. Burbage*, 447 S.W.3d 249, 255 (Tex. 2014) (citing *Casteel* for proposition that commingling of "broad-form damages questions" that incorporate both valid and invalid damages elements may result in harmful error); *Harris Cnty. v. Smith*, 96 S.W.3d 230, 232–36 (Tex. 2002) (extending *Casteel* reasoning to damages questions).

15

Mulch Matters also argues that the evidence is factually insufficient to support the damages finding because Action Trucking's supporting evidence included unsigned trip tickets, overcharges for time spent, and unauthorized sales tax.[6] For the reasons detailed above, the comingled submission of Question 4 also precludes us from conducting a factual sufficiency review of the jury's damages finding based on any particular measure of damages. We thus cannot determine whether the jury's damages award is based on what it determined to be the reasonable and necessary cost of Action Trucking's services *or* the unpaid amounts owed under the contract *or* some combination of both.

Consequently, and for the same reasons above, we must also reject Mulch Matters' factual sufficiency challenge to the damages finding in Question 4. *See, e.g.*, *Bombardier Aerospace Corp.*, 572 S.W.3d at 228–29, 233–34. We overrule Mulch Matters' first issue.

---

[6]  Citing to *Casteel*, Mulch Matters maintains that reversal is additionally required because this evidence "mixed invalid and valid liability theories." But Mulch Matters did not object to Question 4 on this basis, or any basis, during the charge conference. Thus, this argument by Mulch Matters is not properly before us on appeal. *See Harris Cnty.*, 96 S.W.3d at 236.

16

**Joint and Several Liability**

In its second issue, Mulch Matters argues that the finding of joint and several liability in the trial court's final judgment is erroneous because, according to Mulch Matters, Action Trucking failed to plead, prove, or secure a jury finding of any joint and several liability between Prime Trees, Inc. d/b/a Mulch Matters and Mulch Matters, Inc.

Joint and several liability arises in contract based upon the relationship between the parties and the existence of what amounts to joint promises. *Kang v. Derrick*, No. 14-13-00086-CV, 2014 WL 2048424, at *12 (Tex. App.—Houston [14th Dist.] May 15, 2014, pet. denied) (mem. op.).[7] Mulch Matters contends that there is no jury finding of such a relationship or joint promise in this case, nor is there any other pleading or finding that would support joint and several liability, such as conspiracy or alter ego.

We disagree that the lack of a jury finding on the parties' joint and several relationship or their joint promise necessarily precluded the trial court from making that determination when the court's charge and the jury findings demonstrate that a single contract is at issue. *See id.* at *13; *see also Duradril, L.L.C. v. Dynomax*

---

[7] *See also K-Bar Servs., Inc. v. English*, No. 03-05-00076-CV, 2006 WL 903735, at *3 (Tex. App.—Austin Apr. 7, 2006, no pet.) (mem. op.).

*Drilling Tools, Inc.*, 516 S.W.3d 147, 166 (Tex. App.—Houston [14th Dist.] 2017, no pet.).[8]

Here, the court's jury charge defined "Mulch Matters" to mean "Mulch Matters, Inc. and Prime Trees, Inc. d/b/a Mulch Matters, Inc." And in Questions 1 and 2, the jury found that "Mulch Matters," as defined to include both entities, entered into "an agreement" with Action Trucking that Action Trucking would provide transportation services for mulch and tree materials to "Mulch Matters" in exchange for payment and that "Mulch Matters" failed to comply with the agreement.

This is consistent with Action Trucking's first amended petition which sought to hold both Mulch Matters and Prime Trees liable for the breach of the same agreement,[9] as well as the evidence introduced at trial, which included the credit application entered into by Prime Trees, listing Mulch Matters as the parent or affiliate company, and Chavez's testimony that she was filling out that application

---

[8]     *See also id.*

[9]     Action Trucking alleged in its first amended petition that Bowe testified at his deposition that Mulch Matters, Inc. is a d/b/a of Prime Trees, Inc. and that Mulch Matters, Inc., as a stand-alone entity, is no longer in operation. However, Action Trucking alleged that the Texas Secretary of State website still listed Mulch Matters, Inc. as an active entity, and therefore, it added Prime Trees, Inc. as a party. Further, Action Trucking clearly defined "Mulch Matters" in its first amended petition to include both Mulch Matters, Inc. and Prime Trees, Inc. d/b/a Mulch Matters, i.e., the same way Mulch Matters was defined in the jury charge.

18

on behalf of Prime Trees *and* Mulch Matters. Thus, we conclude that under these circumstances, joint and several liability is supported by the pleadings and jury findings on the contract claims. *See Duradril, L.L.C.*, 516 S.W.3d at 166; *Kang*, 2014 WL 2048424, at *12–13.[10]

We overrule Mulch Matters' second issue.

### Omissions from the Jury Charge

In its third issue, Mulch Matters makes a series of arguments that a new trial is warranted because the trial court failed to correctly charge the jury and did not adopt its tendered requests. Mulch Matters initially contends that the trial court improperly refused its proposed Question 1 by not instructing the jury on the disputed payment terms.[11] Mulch Matters also asserts that the trial court improperly refused its proposed Instruction 1 concerning circumstantial evidence.[12] Finally,

---

[10] *See also K-Bar Servs.*, 2006 WL 903735, at *3–4.

[11] In Question 1 of the jury charge, the jury was asked "Did Mulch Matters and Action Trucking enter into an agreement that Action Trucking would provide transportation services for mulch and tree materials to Mulch Matters in exchange for payment?"

In contrast, Mulch Matter's proposed Question 1 asks: "Did Action Trucking agree to provide goods or services to Mulch Matters at a flat hourly rate of $110 on the Cypresswood project, and did Mulch Matters agree to pay Action Trucking a flat hourly rate of $110 on the Cypresswood project?"

[12] Mulch Matters' proposed Instruction 1 states:

> A fact may be established by direct evidence or circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by

Mulch Matters claims that the trial court improperly refused its proposed Instructions 5 and 6, concerning authority and acts of corporate agents,[13] and its proposed Instruction 7 and proposed Questions 4, 5, 6, and 12, concerning whether Action Trucking breached the agreement and whether Action Trucking was negligent.[14] We cannot reach the merits of these jury charge complaints because Mulch Matters did not properly preserve them in the trial court.

---

        circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

[13]    Mulch Matters' proposed Instruction 5 states: "A corporation can only act through its employees and agents. An act committed by an agent of a corporation for the purpose of apparently carrying out the ordinary course of business of the corporation binds the corporation."

Proposed Instruction 6 states: "If Action Trucking and Mulch Matters agreed to other essential terms but failed to specify price, it is presumed a reasonable price was intended."

[14]    Mulch Matters' proposed Instruction 7 states:

    With every contract, there is a common-law duty to perform it with care, skill, reasonable expedience, and faithfulness. Likewise, a contract for professional services creates a duty that the professional exercise of the degree of care, skill, and competence that reasonably competent members of the profession would exercise under similar circumstances.

Proposed Question 4 asks: "Did Action Trucking agree to perform its transportation services on the Cypresswood project without its trucks being overturned or without interference of Mulch Matters' operations?"

Proposed Question 5 asks: "Did Action Trucking fail to comply with the agreement you found in response to Question No. 4?"

Proposed Question 6 asks: "Did the negligence of Action Trucking proximately cause Mulch Matters' damages?"

*Preservation of Error*

The Texas Rules of Civil Procedure obligate a party to present objections to the charge "before the charge is read to the jury." TEX. R. CIV. P. 272. The objection must be specific; "[a] party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection." TEX. R. CIV. P. 274; *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 43 (Tex. 2007). "Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." TEX. R. CIV. P. 274.

Moreover, the party's objection must have "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1). "A party must clearly designate the alleged error and specifically explain the basis of its complaint in its objection to the charge." *Hamid v. Lexus*, 369 S.W.3d 291, 296 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (internal quotation marks omitted). "[These] procedural requirements for determining whether a party has preserved error in the

---

Proposed Question 12 asks: "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Mulch Matters for its damages that resulted from such failure to comply or negligence?"

21

jury charge are explained by one basic test: whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *Thota v. Young*, 366 S.W.3d 678, 689 (Tex. 2012) (internal quotation marks omitted).

In that regard, affirmative errors in the charge—i.e., a defective question, definition, or instruction—must be preserved by objection, and omissions from the charge, including omissions concerning a definition, instruction, or question on which the complaining party has the burden of proof, must be preserved by an objection *and* a request for a substantially correct definition, instruction, or question. *See* TEX. R. CIV. P. 274, 278.[15] Moreover, "[n]o objection to one part of the charge may be adopted and applied to any other part of the charge by reference only." TEX. R. CIV. P. 274.

***Application to the Facts***

Here, Mulch Matters presented the trial court with a document entitled "Defendant's Proposed Jury Charge (Revised 12/2/2021)." Beneath each requested instruction, definition, or question there was a space for the trial court to endorse "given," "refused," or "modified." Although a checkmark was placed next to some, but not all, of the questions, instructions, and definitions indicating that they were either refused or modified, the trial court did not endorse any of them individually.

---

[15] *See also* Comm. on Pattern Jury Charges of the State Bar of Tex., *Texas Pattern Jury Charges—Bus., Consumer, Ins., Emp.* PJC 116.1 (2022).

*See* TEX. R. CIV. P. 276. Instead, at the urging of Mulch Matters, the trial court simply signed the cover page "refused" and added the date "12/2/21."

At the charge conference, the following exchange occurred:

THE COURT:  Let the record reflect that both parties are present in the courtroom, the jury is not present. I have prepared the charge of the Court and submitted it to both parties for their review. Any objections to the charge . . . ?

. . . .

THE COURT:  From defense, any objections?

[DEFENSE]:  Yes. I have all of the proposed – of my charts that I would like to make that as an objection, global objection. I'd ask for the Court to sign refused on that at the top and enter that into the record.

THE COURT:  You have this all marked up.

[DEFENSE]:  It's got some highlights, but there isn't anything else.

THE COURT:  There's some checkmarks on all of them.

[DEFENSE]:  Yeah. Some of them are modified. Some of them were refused. You can globally – I think the easiest way is to globally sign it "refused."

THE COURT:  Okay. Two sides. I don't think my clerk is too happy. Okay.

[DEFENSE]:  Can we go enter that into the record now?

THE COURT:  Yeah. We'll go ahead and make this an exhibit or do I just have her, the clerk file it?

COURT REPORTER: I thought it goes into the file.

THE COURT:  Yeah. I think I'll just have the clerk file it.

23

| | |
|---|---|
| [DEFENSE]: | Okay.  Thank you, Your Honor. |
| THE COURT: | But on the record, let's state that I -- Defendant has proposed the following changes that are called Defendant's Proposed Jury Charge revised 12 through 21.  I've overruled all of those objections.  And so I'm going to go ahead and scan it and make it part of the Court's record. |
| [DEFENSE]: | Thank you, Your Honor. |
| THE COURT: | Okay.  Thank you. |

This is the extent of the charge conference.  Mulch Matters did not make any specific objections to the court's charge as given.  And although Mulch Matters purports to have raised a "global objection," that "global objection" was simply the submission of its proposed jury charge.  It included no objection to any part of the court's charge.  This was insufficient to preserve any objections for appeal. *See Religious of Sacred Heart of Tex. v. City of Hous.*, 836 S.W.2d 606, 613–14 (Tex. 1992) (explaining that objection is required to complain about defectively submitted question); *see also* TEX. R. CIV. P. 273 ("A request by either party for any questions, definitions, or instructions shall be made separate and apart from such party's objections to the court's charge.").[16]

---

[16] *See also EYM Diner L.P. v. Yousef*, No. 05-19-00636-CV, 2020 WL 6883171, at *10–11 (Tex. App.—Dallas Nov. 24, 2020, pet. dism'd) (mem. op.) (holding that trial court's global denial of parties' requested instructions and questions was insufficient to preserve appellants' allegations of charge error where parties did not raise specific objections to charge); *Clark v. Dillard's Inc.*, 460 S.W.3d 714, 729–30 (Tex. App.—Dallas 2015, no pet.) (same).

Mulch Matters' global tender was no better.  It failed to comply with Texas Rule of Civil Procedure 278, which provides "[the] [f]ailure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment." TEX. R. CIV. P. 278.  The same is true for a requested definition or instruction. *Id.*  And the party must secure a ruling from the trial court on each tendered instruction, question, or definition. *See* TEX. R. CIV. P. 276.

Here, Mulch Matters tendered its proposed jury charge to the trial court as a "global objection."  But, as noted above, it contained no objections.  And rather than endorse each proposed tender, the trial court, at Mulch Matters' insistence, endorsed only the front page of Mulch Matters' filing with "refused." *See Marshall v. Harris Cnty. Mun. Util. Dist. No. 358*, No. 01-07-00910-CV, 2011 WL 286167, at *11 (Tex. App.—Houston [1st Dist.] Jan. 20, 2011, pet. denied) (mem. op.) (error not preserved in accordance with Rule 276 because trial court did not endorse any question on proposed charge).

Endorsement by the trial court is not the exclusive means of preserving error for refusing a charge request, so long as the court's refusal of the tender is otherwise clear from the record. *Dall. Mkt. Ctr. Dev. Co. v. Liedeker*, 958 S.W.2d 382, 387

(Tex. 1997) (per curiam), *overruled on other grounds by Torrington Co. v. Stutzman*, 46 S.W.3d 829, 840 n.9 (Tex. 2000). But that is also not shown by the record.

As described above, Mulch Matters provided only proposed submissions at the charge conference in a global fashion. And it is evident from the exchange at the charge conference, along with the court's charge and Mulch Matters' tenders, that the trial court did *not* actually refuse all of Mulch Matters' submissions. When asked by the trial court what the various markings and checkmarks were on Mulch Matters' proposed submissions, Mulch Matters' counsel answered: "Some of them are modified. Some of them were refused. You can globally – I think the easiest way is to globally sign it [all] 'refused.'"

Mulch Matters' proposed Question 3, relating to the whether Mulch Matters' failure to comply was excused, and proposed Question 10, relating to damages for Mulch Matters' failure to comply, were already marked as "modified." And proposed Instruction 6 in the global tender was marked as "refused," even though it was actually included in the court's charge as Instruction 1.

Taken together, we cannot conclude that the trial court was made aware of each of the complaints to the court's charge that Mulch Matters now makes on appeal and that it plainly ruled on each of those complaints. *See id.*; *see also Thota*, 366 S.W.3d at 689. As a result, we must conclude that Mulch Matters' complaints on

26

appeal about the court's charge are not properly before us. *See* TEX. R. APP. P. 33.1(a)(1); TEX. R. CIV. P. 272, 274, 278.

We overrule Mulch Matters' third issue.

## Prejudgment Interest

### A. Application of the Prompt Payment Act

In its first issue in its cross-appeal, Action Trucking argues that the trial court had no discretion to disregard the Prompt Payment Act, which requires awarding Action Trucking prejudgment interest at a rate of 1.5% per month, as opposed to the 5% per year the trial court awarded in the final judgment. *See* TEX. PROP. CODE § 28.004.[17] We agree.

---

[17] We reject Mulch Matters' contention that Action Trucking failed to preserve this argument by not obtaining a ruling on its motions for entry of judgment. Action Trucking filed two motions for entry of judgment, in each arguing that it was entitled to 1.5% interest per month, as provided for by the Prompt Payment Act, and attached a proposed final judgment that included a prejudgment interest award in this amount. *See Benjamin Franklin Sav. Ass'n v. Kotrla*, 751 S.W.2d 218, 224 (Tex. App.–Houston [14th Dist.] 1988, no writ) (holding appellee's complaint about denial of prejudgment interest in final judgment preserved by its motion for entry of judgment and proposed judgment which contained award of prejudgment interest). These motions were implicitly denied when the trial court entered a final judgment awarding prejudgment interest, but not at the rate requested by Action Trucking in its motions. *See* TEX. R. APP. P. 33.1(a)(2)(a) (preservation shown when trial court rules on motion "either expressly or implicitly"). Action Trucking also moved for judgment, raising these same arguments, after the trial court signed the final judgment. This motion was likewise implicitly denied when the trial court signed the corrected final judgment that again awarded prejudgment interest, but not at the rate requested by Action Trucking. *See id.*

*Applicable Law*

The Prompt Payment Act provides:

A subcontractor who receives a payment under Subsection (b) or otherwise from a contractor in connection with a contract to improve real property shall pay each of its subcontractors the portion of the payment, including interest, if any, that is attributable to work properly performed or materials suitably stored or specially fabricated as provided under the contract by that subcontractor, to the extent of that subcontractor's interest in the payment. The payment required by this subsection must be made not later than the seventh day after the date the subcontractor receives the contractor's payment.

TEX. PROP. CODE § 28.002(c).

Section 28.004, captioned "Interest on Overdue Payment," provides as follows:

(a) An unpaid amount required under this chapter begins to accrue interest on the day after the date on which the payment becomes due.

(b) An unpaid amount bears interest at the rate of 1 1/2 percent each month.

(c) Interest on an unpaid amount stops accruing under this section on the earlier of:

(1) the date of delivery;

(2) the date of mailing, if payment is mailed and delivery occurs within three days; or

(3) the date a judgment is entered in an action brought under this chapter.

*Id.* § 28.004.

Prejudgment interest is recoverable as a matter of right when an ascertainable sum of money is found due and payable at a definite date before judgment. *Gordon*

28

*v. Leasman*, 365 S.W.3d 109, 118 (Tex. App.—Houston [1st Dist.] 2011, no pet.);

*see, e.g.*, *Henry Bldg., Inc. v. Milam*, No. 05-99-01400-CV, 2001 WL 246882, at *3

(Tex. App.—Dallas Mar. 14, 2001, pet. denied) (holding that trial court erred by

awarding contractor six-percent-per-year prejudgment interest instead of one-and-

one-half percent per month prejudgment interest under section 28.004(b)). A

general prayer for prejudgment interest sufficiently invokes a statutory right to such

interest. *Benavidez v. Isles Constr. Co.*, 726 S.W.2d 23, 25 (Tex. 1987).

Because the plaintiff is entitled to statutory prejudgment interest based on a

prayer for general relief alone, a plaintiff need not specifically plead prejudgment

interest if the claim falls within the scope of a statute authorizing prejudgment

interest. *Gordon*, 365 S.W.3d at 118.[18]

*Analysis*

We disagree with Mulch Matters' contention that in order to be entitled to the

statutory prejudgment interest rate allowed by the Prompt Payment Act, Action

Trucking had to specifically plead its applicability and obtain findings by the jury.

In *Gordon v. Leasman*, this Court considered, and rejected, similar arguments.

365 S.W.3d at 118–19. There, a carpenter sued a husband and wife, along with the

---

[18]     *See, e.g.*, *Talley Constr. Co. v. Rodriguez*, No. 01-03-01147-CV, 2006 WL 908180, at *11 (Tex. App.—Houston [1st Dist.] Apr. 6, 2006, no pet.) (mem. op. on rehr'g) (holding that trial court did not err in awarding claimant eighteen percent per year in prejudgment interest under section 28.004(b) because claimant's pleading included prayer for general relief).

wife's interior design company, for breach of contract, quantum meruit, and unjust enrichment to recover a balance owed for work he performed at the couple's home. *Id.* at 112–14

Following a jury verdict in favor of the contractor on his breach of contract claim, the trial court in *Gordon* entered judgment in favor of the contractor, awarding him damages and prejudgment interest calculated at five percent per year. *Id.* at 114. On cross-appeal, the contractor contended that the trial court erred in awarding prejudgment interest at 5%, rather than at the rate of 1.5% per month, as authorized by the Prompt Payment Act. *Id.* at 118. In response, the couple argued that the contractor did not properly plead the rate of 1.5% and failed to obtain a jury finding on whether they violated the Prompt Payment Act. *Id.*

This Court in *Gordon* concluded that a plaintiff need not specifically plead prejudgment interest if the claim falls within the scope of a statute authorizing prejudgment interest. *Id.* at 118. And, because the contractor's claim was for "an overdue payment that a real property owner owed him for contracting work," this Court held that "it [fell] within the provisions of section 28.002(a), [and] the trial court should have awarded prejudgment interest at one and one-half percent per month as provided in section 28.004(b)." *Id.* at 118–19.

The same is true here. In its amended petition, Action Trucking included a general prayer for prejudgment interest, and we conclude that its claim falls within

30

the provisions of section 28.002(c).  The undisputed evidence at trial established that Mulch Matters entered into a subcontract with ATZ for services related to the improvement and development of real property, specifically a 100-acre tract located on Cypress Wood Drive.  Mulch Matters then subcontracted with Action Trucking to assist with improving, i.e., clearing, the land on the real estate project. *See* TEX. PROP. CODE § 28.001(2)(B) (defining "improve" to mean "excavate, clear, grade, fill, or landscape real property").

Mulch Matters received its final payment from ATZ on March 13, 2020.  Despite having received invoices via email[19] and an in-person demand for payment of the outstanding balance, Mulch Matters failed to pay the remaining amounts owed to Action Trucking within seven days after receiving final payment from ATZ.  Because Action Trucking's claim is for an overdue payment that a subcontractor owed it for subcontracting work related to the improvement of real property, its claim falls within the provisions of section 28.002(c) of the Property Code. *See id.* § 28.002(c); *Gordon*, 365 S.W.3d at 118–19.

Accordingly, the trial court should have awarded prejudgment interest at 1.5% per month as provided in section 28.004(b). TEX. PROP. CODE § 28.004(b).  We

---

[19]    Bowe disputed that Mulch Matters was aware of the emailed invoices.  He testified that he received "four or five" emails in November and December 2019 with the invoices, but he did not know the emails contained invoices, and the emails remained unopened until after they were discovered during the discovery phase of this litigation.

sustain Action Trucking's first issue on cross-appeal, and remand to the trial court for a calculation of prejudgment interest.

## B.    Accrual Date

In its fifth issue, Mulch Matters argues that the trial court erred in setting the wrong date for the accrual of prejudgment interest.  In the final judgment, the trial court awarded Action Trucking prejudgment interest beginning on March 21, 2020. Mulch Matters argues that prejudgment interest should not have begun to accrue until June 16, 2020—the date Action Trucking filed this lawsuit. *See* TEX. FIN. CODE § 304.104 ("[P]rejudgment interest accrues on the amount of a judgment during the period beginning on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed[.]").

But because we have concluded that the Prompt Payment Act applies, we hold that the trial court correctly set the accrual date for prejudgment interest as March 21, 2020.  Under the Prompt Payment Act, "[a]n unpaid amount required under this chapter begins to accrue interest on the day after the date on which the payment becomes due." TEX. PROP. CODE § 28.004(a).

Here, the evidence at trial conclusively established that Mulch Matters received full payment from ATZ on March 13, 2020, making March 20, 2020 Mulch Matters' statutory deadline to pay its own subcontractor, Action Trucking.  Pursuant to sections 28.002 and 28.004, prejudgment interest started to accrue the day after

32

the due date of the payment, which was March 21, 2020. *See id.* §§ 28.002(c), 28.004(a). The trial court correctly noted March 21, 2020 as the accrual date for prejudgment interest.

We overrule Mulch Matters' fifth issue.

## C.   Prejudgment Interest on Attorney's Fee Award

In its sixth issue, Mulch Matters argues that the final judgment erroneously awarded prejudgment interest on attorney's fees. *See C&H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315, 325 (Tex. 1994). While it is true that prejudgment interest is generally not allowed on an award of attorney's fees, we do not agree that the final judgment here in fact awarded prejudgment interest on attorney's fees.

The judgment in this case first lists the amount of damages the jury awarded, "less a credit of $12,520.00 for a total principal sum in the amount of $74,453.50[.]" It then awards "prejudgment interest at a rate of 5% per annum from March 21, 2020 through the date of judgment." Following the prejudgment interest award, the judgment then lists the attorney's fees awarded. There is no indication in the judgment that the prejudgment interest was based on or included the attorney's fees awarded.

In any event, this point is moot because we are remanding to the trial court for a calculation of prejudgment interest—which will be based on the amount of actual

33

damages the jury awarded, taking into account the $12,520 partial payment, at the statutory rate of 1.5% per month as directed by the Prompt Payment Act.

We therefore overrule Mulch Matters' sixth issue.

**Conditional Attorney's Fees**

In its second issue in its cross-appeal, Action Trucking argues that the trial court erred in failing to award it the conditional appellate fees stipulated to by the parties. Here, the parties stipulated to the reasonable and necessary trial and appellate attorney's fees, but the trial court included only the stipulated attorney's fees for trial in the corrected final judgment.

Action Trucking sued Mulch Matters for breach of contract and, in its amended petition, sought to recover attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE § 38.001(8) ("A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract.") The Texas Supreme Court has held that "[t]o recover attorney's fees under [s]ection 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997); *see also Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015).

Under section 38.001, the trial court has no discretion to deny attorney's fees when presented with evidence of the same. *Ventling*, 466 S.W.3d at 154. An award of reasonable attorney's fees is mandatory under section 38.001 if there is proof of the reasonableness of the fees. *AMX Enters., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 516 (Tex. App.—Fort Worth 2009, no pet.).[20] If trial attorney's fees are mandatory under section 38.001, appellate attorney's fees are also mandatory when proof of reasonable fees is presented. *Ventling*, 466 S.W.3d at 154.[21]

There is no dispute that Action Trucking prevailed on its breach-of-contract claim and was awarded damages. Thus, it was entitled to attorney's fees under section 38.001 as a matter of law. *See* TEX. CIV. PRAC. & REM. CODE § 38.001(8); *Ventling*, 466 S.W.3d at 154; *Green Int'l, Inc.*, 951 S.W.2d at 390.

---

[20] *See also, e.g.*, *Upshaw v. Lacado, LLC*, 650 S.W.3d 61, 83 (Tex. App.—Fort Worth 2021, pet. denied) ("When a prevailing party in a breach-of-contract suit seeks attorney's fees, an award of reasonable fees is mandatory if there is proof of the reasonableness of the fees."); *Brent v. Field*, 275 S.W.3d 611, 622 (Tex. App.—Amarillo 2008, no pet.) ("Under section 38.001, an award of reasonable attorney's fees is mandatory if there is proof of the reasonableness of the fees. A court possesses discretion to determine the amount of attorney's fees, but it lacks discretion to deny attorney's fees if they are proper under section 38.001." (internal citations omitted)).

[21] *See also, e.g.*, *DaimlerChrysler Motors Co. v. Manuel*, 362 S.W.3d 160, 198–99 (Tex. App.—Fort Worth 2012, no pet.) (holding that if an award of trial attorney's fees is mandatory under section 38.001, then an award of appellate attorney's fees is likewise mandatory).

The trial court had no discretion to deny attorney's fees once it was presented with proof of the reasonableness of those fees. *See Ventling*, 466 S.W.3d at 154. Here, the parties stipulated on the record "to the reasonableness and necessity for attorney's fees for [Action Trucking] in the amount of $80,000 at trial and $20,000 on appeal, $10,800 on appeal to the Supreme Court, and another $5,800 in the event there is oral argument before the Supreme Court."

Because a stipulation constitutes some evidence of the reasonableness of requested attorney's fees, *see, e.g.*, *Karam v. Brown*, 407 S.W.3d 464, 475 (Tex. App.—El Paso 2013, no pet.), the trial court had no discretion to refuse to award both trial and conditional appellate attorney's fees to Action Trucking. *See Ventling*, 466 S.W.3d at 154; *DaimlerChrysler Motors Co. v. Manuel*, 362 S.W.3d 160, 198–99 (Tex. App.—Fort Worth 2012, no pet.).

Because the trial court failed to do so, we sustain Action Trucking's second issue on cross-appeal.

## Conclusion

Based on all of the foregoing, we modify the trial court's final judgment to reflect, in accordance with the uncontested and stipulated evidence, an award of $20,000 in conditional attorney's fees for the appeal to this Court, $10,800 in conditional attorney's fees for an appeal to the Supreme Court, and $5,800 in conditional attorney's fees for oral argument before the Supreme Court.[22]

We further modify the trial court's final judgment to reflect the rate of prejudgment interest of 1.5% per month, and we affirm the trial court's judgment as modified.

Finally, we remand this case to the trial court for the sole purpose of calculating of the amount of prejudgment interest consistent with this opinion.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Guerra and Farris.

---

[22] *See End Users, Inc. v. Sys. Supply For End Users, Inc.*, No. 14-06-00833-CV, 2007 WL 2790379, at *6 (Tex. App.—Houston [14th Dist.] Sept. 27, 2007, no pet.) (modifying trial court's judgment to award uncontested amount of appellate attorney's fees).